John Doe, ex dem., George L. Campbell, and others *vs.* Priscilla Fletcher.

*What constitutes a sufficient prima facie · Title to maintain Eject-ment—Possession of the Ancestor enures to the benefit of the Heir at law.*

In an action of ejectment instituted in December, 1871, it was shown on the part of the plaintiffs, that their maternal grandfather, under whom they claimed, was in 1808, in actual, adverse and notorious possession, by en-closure, of a parcel of ground in the City of Baltimore, of which the lot in controversy was a part; that in 1818 he died in possession, leaving a paper writing, purporting to be his last will and testament, signed by two wit-nesses; that by this paper he devised the parcel of ground aforesaid to his four sons, and his daughter, the mother of the plaintiffs: that the four sons moved away from the city, returning at intervals, and the daughter continued to live in the house and to possess the premises from the death of her father till 1840, when the house was burned down, and she and her children removed to a house in the neighborhood, off the property, where she resided till her death, in 1855; that during that period she continued to claim the property and exercise acts of ownership so far as asserting to her children that she was owner, constituted such acts, together with statements made by her to them, in reference to an application made to her by·a person to rebuild her house, and the reasons for not rebuilding; that from the time the house was burned, in 1840, till after the death of the daughter, in 1855, the property was unoccupied; and no one was in the actual possession until within a period less than twenty years before the institution of the ejectment suit; that the four sons and their descendants were all dead, and the plaintiffs were the only heirs at law of their grandfather. The plaintiffs claimed the lot in controversy by possession, and not by a paper title. HELD:

1st. That the facts in the case showed a *prima facie* title in the plaintiffs, sufficient to support the action of ejectment.

2nd. That the grandfather having held the actual, adverse and notorious possession of the property, by enclosure, from 1808 till his death, in 1818, his possession enured to the benefit of his daughter, who came into possession as his heir at law; and she, having acquired a title by such possession as gives right, continuing for more than twenty years, her legal seizin continued after she removed from the property, and her title descended on her death to the plaintiffs, her heirs at law.

3d. That in order to maintain the action it was not necessary that either the mother of the plaintiffs, or they themselves, should have been in the actual occupancy or possession of the property, within twenty years before the institution of the suit.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL C. J., STEWART, BOWIE, ALVEY and ROBINSON, J.

*Wm. H. S. Burgwyn*, for the appellants.

The mother of the appellants obtained an indefeasible fee-simple title to the property by its adverse, hostile, notorious and consecutive possession by enclosure by her father and self, from the year 1808 to the year 1840, when the house was burned. 2 *Washburn on Real Prop.*, 501.

The mother of the plaintiffs being once legally seised and possessed of the property, her seisin continues till some actual, notorious and hostile dispossession takes place, and has continued for twenty years. 2 *Washburn on Real Prop.*, 493 ; *Brown vs. King*, 5 *Met.*, 173.

If a freehold title descends to one as heir, the law invests him with the seisin without entry upon the land. *Brown vs. Wood*, 17 *Mass.*, 68 ; *Green vs. Chelsea*, 24 *Pick.*, 78.

It was ruled in the case of *Ford vs. Grey*, 1 *Salkeld*, 285, "that a claim or entry to prevent the statute of limitations must be upon the land, unless there be some special reason to the contrary."

It is contended that the appellants not having resided upon the property since 1840, when the house was burned, have made no entry upon the land sufficient to prevent the statute running against them. *Runnington on Ejectment*, 58.

In reply it may be stated, that it was the burning of the house that necessitated the removal from the property

of the appellants' mother. That no one having possession of the property there was no tenant to the præcipe to enter upon. But, that the appellants' mother once having the legal title, the seisin remained in her, that she continued to be possessed of the property till the adverse possession took place, which was within less than twenty years prior to the institution of the suit.

The seisin therefore, must have continued in the mother of the plaintiffs from 1840 till the entry of the appellee. If the seisin continued in her, the possession must have continued in her, for seisin and possession are legally the same thing—*Co. Lit.,* 153 *a.* Therefore, there could not have been an entry by the appellants till the disseisin by the appellee; for one cannot enter upon himself; and the disseisin by the appellee, not being for twenty years prior to the institution of this suit, the appellants' right of entry was not tolled, and they are entitled to recover. *Hawk vs. Senseman,* 6 *Sear. & Rawle,* 21; *Clay vs. White,* 1 *Munford,* 162; *Shearman vs. Irvine's Lessee,* 4 *Cranch,* 369; *Smith, ex dem., Teller vs. Lorillard,* 10 *John.* 338. (*mar.*)

No counsel appeared for the appellee.

BARTOL C. J. delivered the opinion of the Court.

This appeal is from the Superior Court of Baltimore City, in an action of ejectment instituted by the appellants against the appellee, to recover possession of a lot of ground situated in Baltimore City.

It appears by the bill of exceptions that when the plaintiffs' Counsel had made his opening statement to the jury, the Superior Court upon the prayer of the defendant, instructed the jury "that even if they should find all the facts which the plaintiffs have stated and offered to prove, the plaintiffs have not laid the foundation for a recovery in this action, and their verdict ought to be for the defendant."

In disposing of this appeal therefore, we must consider the facts contained in the statement, as proved or admitted. They are as follows: Jacob Sleeper, the maternal grandfather of the plaintiffs, under whom they claim, was in 1808 in actual, adverse and notorious possession, by enclosure, of a parcel of ground, of which the lot in controversy is a part; and in 1818 died in possession as aforesaid, leaving a paper writing purporting to be his last will, signed by two witnesses. By which paper he devised the parcel of ground aforesaid to his four sons, Isaac, Abraham, John and Joshua, and his daughter, "Philipina," the mother of the plaintiffs. That the four sons moved away from the city, returning at intervals, and the daughter, "Philipina," continued to live in the house, and to possess the premises aforesaid, from the death of her father in 1818 till 1840, when the house was burned down, and she and her children moved to a house in the neighborhood, off the property, where she resided till her death in 1855. During that period she continued to claim the property, and exercised acts of ownership, (so far as asserting to her children that she was owner, constituted such acts, together with statements, made by her to them, in reference to an application made to her by a person, to rebuild her house, and her reasons for not rebuilding).

"Isaac, Abraham, John and Joshua Sleeper, and their descendants are all dead; and the plaintiffs are the only heirs at law of Jacob Sleeper."

"The plaintiffs claimed the lot in controversy by a possessive and not by a paper title."

In answer to a question from the Court, the counsel stated, that "he did not expect to prove actual, adversary possession by the plaintiffs or their mother, within twenty years prior to the institution of the suit; if (as he understood the Court to rule,) that residing upon the property was necessary to constitute such actual adversary possession." From the time the house was burned,

in 1840, till after the death of "Philipina," in 1855, the property was unoccupied; and no one was in the actual possession until within a period, less than 20 years before the institution of this suit. No brief or argument has been submitted on the part of the appellee.

We think the facts stated show a *prima facie* title in the plaintiff, sufficient to support the action. It is settled by *Armstrong vs. Risteau,* 5 *Md.*, 256, that "twenty years adverse possession will enable a plaintiff to maintain ejectment." Such a possession, it appears, Philipina Sleeper had from the year 1818 till 1840, during all which period she had the actual possession and occupancy, openly claiming title, and exercisingr ights as owner. Her father, Jacob Sleeper, had held the "*actual, adverse and notorious possession by inclosure,*" from 1808 till his death, in 1818; his possession enured to the benefit of Philipina, who came into possession as his heir at law. 2 *Washburn on R. Prop.*, 493.

It appears further that when in 1840, by reason of the destruction of the dwelling, which rendered it impossible for her to reside upon the property, she ceased to occupy it, that she by no means abandoned her title and claim to it as owner; but continued to assert the same till her death in 1855.

Having acquired a title by such possession as gives right, continuing for more than twenty years, her legal seisin continued after she had removed from the property, and her title descended, on her death, to the plaintiffs, her heirs at law.

In order to maintain ejectment it is not necessary that either she or the plaintiffs should have been in the actual occupancy or possession of the property, within twenty years before the institution of this suit. An adverse possession by another for twenty years, would of course defeat or bar their claim. But according to the facts as stated by the counsel, the property remained unoccupied,

after the dwelling was burned, until within less than twenty years before this suit was commenced.

Considering that it was error to grant the defendant's prayer, the judgment will be reversed, and a new trial ordered.

*Judgment reversed*
*and new trial ordered.*