## LAWLESS, ADMINISTRATRIX *v.* MERRICK ET AL.

[No. 57, September Term, 1961.]

66

*Decided November 20, 1961.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Edward C. Donahue,* with whom were *Donahue & Ehrmantraut, William A. Ehrmantraut, Joseph Schap* and *James T. Wharton* on the brief, for appellant.

*Thomas A. Garland* and *Charles C. W. Atwater,* for appellees.

SYBERT, J., delivered the opinion of the Court.

This appeal questions the propriety of the granting of a motion for summary judgment in favor of appellees (defendants below) by the trial court on grounds that there was no genuine dispute as to any material fact and that appellees were entitled to judgment as a matter of law.

The relevant facts begin with the purchase by appellees, Robert G. Merrick, John McC. Mowbray, and Walter C. Mylander, Jr., as trustees, of 582 acres of unimproved land in Fairfax County, Virginia. Ben W. Lawless, Sr. (whose administratrix was plaintiff below and is appellant here) had acted as broker in the sale to appellees and thereafter expressed interest in reselling the property for them. Toward this end he was anxious to procure sewerage facilities for the property, which obviously would make it more valuable and result in a greater commission on any resale. As a result of discussions between Colonel Mowbray and Mr. Lawless the latter on October 31, 1955 submitted in letter form the following proposal:

"Following our conversation, this letter will outline the basis on which I would like to make an effort to get Fairfax County *permission for you or your grantee to build a pumping plant and force main leading to the proposed Fairfax County Pumping station to be erected at Braddock Road and Accotink Creek,* all as shown on enclosed map of your property." (Emphasis supplied.)

The specific terms by which compensation was to be determined are contained in the following portion of the letter:

"(a) No compensation to me *unless such a permit is granted, or contract made with County for installation of improvement;*

"(b) If permit is granted, or contract entered into, then on any subsequent sale of the property I am to receive at the time of such sale five percent of the amount by which the sales price exceeds the sum of $1,500 per acre plus any expense you have been to in connection with our arrangement, including cost of installation of the improvement, if you decide to build it yourself;

"(c) It may be that as a result of the negotiations by me under this arrangement, that a favorable deal may be worked out with the County and adjoining landowners for a more comprehensive system including the other lands, and perhaps a location of a pumping station lower down on Accotink Creek. If this negotiation has that result, then I would think you ought to recognize my effort, but as the matter is a bit nebulous, it is impossible to set up any terms for any compensation, and I am content to let it stand as follows: *if, in your sole discretion, you think I am entitled to any compensation out of such a deal with the County and adjoining property owners, you may pay me, whatever in your sole opinion, you think I should receive,* and if you decide that I am not entitled to any compensation for my effort, I do hereby and will submit to your decision, and

will not make any claim for any compensation."
(Emphasis supplied.)

The letter stated that Lawless would have until April 30,
1956 "to complete my work and to secure a permit for this in-
stallation * * *". There was a written acceptance of Mr. Law-
less' proposal on behalf of the trustees in a letter of Mr. My-
lander dated January 20, 1956, confirming an oral assurance
"to accept your services on the basis outlined." Prior to the
acceptance, Mr. Lawless had been actively seeking the de-
sired sewerage improvements through various contacts with
owners of adjacent land, as well as with Fairfax County offi-
cials. He appeared before the Board of Supervisors of Fair-
fax County on December 28, 1955 in an effort to obtain the
necessary action by that body in regard to the improvements.
Mr. Lawless recounted these efforts in a letter to Colonel
Mowbray dated December 29, 1955.

On January 11, 1956, also prior to Mr. Mylander's letter
of acceptance of Mr. Lawless' proposal of October 31, 1955,
the Board of Supervisors, after the public session which Mr.
Lawless attended, adopted by resolution a policy that one
thousand acres of land south of Braddock Road and east and
west of Accotink Creek would be permitted to drain *by
gravity* into the Braddock Road Pumping Station. Due to
the topography, the announced policy presumably would in-
clude the land owned by appellees, as to which the need of a
separate pumping station would be eliminated. Mr. Lawless
expressed in his letter of December 29, 1955, to Colonel
Mowbray his opinion that 400 acres of the appellees' land
could be served by gravity and that this type of sewage drain-
age should be pursued. He did not, however, suggest any
change in his proposal of October 31, 1955, not yet accepted
by the appellees, which specifically dealt with a permit for
construction of a sewage pumping station, or a contract made
with the county for installation of the improvement.

Mr. Lawless died on April 14, 1956. The trustees' land
was not developed in any way, although a topographical sur-
vey, made in November, 1956, indicated that 540 acres of the
tract was physically suitable for sewage gravity flow. The

testimony is clear that no permit was ever granted or contract entered into by the trustees for the construction of any sewerage facilities, nor was any gravity system installed.

The land in question was still undeveloped when, on December 14, 1959, the appellees entered into a contract of sale by which they sold two hundred acres of the tract at $2,750 per acre. Thereupon demand was made by the administratrix of the estate of Mr. Lawless for a commission of five per cent of the sale price in excess of $1,500 per acre, relying on the agreement as set forth in the October 31, 1955 letter from Mr. Lawless to Colonel Mowbray. Appellant's position was that the estate was entitled to the commission on the ground that Mr. Lawless had, by his efforts, obtained the necessary permission for the sewerage improvements contemplated by the contract. Suit was instituted in the Superior Court of Baltimore City when the trustees refused payment. Appellees, denying any liability under the contract, moved for a summary judgment on the basis that the pleadings presented no genuine dispute as to any material fact and that they were entitled to judgment as a matter of law. The trial court granted the motion and appellant appeals from the judgment entered for appellees for costs.

Appellant alleges error in that: (1) "the language used in this contract permits a genuine dispute as to the meaning of the contract and the intent of the parties", and (2) the evidence established partial or substantial performance of the contract.

(1)

The appellant maintains that the contract is ambiguous in its terms and hence that a genuine dispute expressed in the pleadings as to its meaning precluded the granting of a summary judgment. Thus it is plain that this argument is not aimed at any disputed facts as to the circumstances from which this controversy arose but rather at the interpretation of the contract itself. The rule applicable to motions for summary judgment in such situations is well established. "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is *no genuine dispute as to any*

*material fact and that the moving party is entitled to a judgment as a matter of law."* (Emphasis supplied.) Maryland Rule 610 d 1; see *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 155 A. 2d 691 (1959), and *Mullan Co. v. International Corp.,* 220 Md. 248, 151 A. 2d 906 (1959). Conversely, if there is a genuine dispute as to any material *fact,* summary judgment cannot properly be granted. *Tellez v. Canton Railroad Co.,* 212 Md. 423, 129 A. 2d 809 (1957); *Burrell v. Frisby,* 212 Md. 181, 129 A. 2d 75 (1957). In determining whether a summary judgment has properly been granted, we must consider the facts stated, and the proper inferences to be drawn therefrom, in the light most favorable to the appellant. *Roland v. Lloyd E. Mitchell, Inc., supra.*

Appellant maintains that there was an issue of fact as to whether on the one hand the contract limited performance to the securing of a permit for construction of a pumping station and force main, or whether on the other hand it simply contemplated improvement of the land with sewerage facilities. She points to the wording of paragraph (a) of the contract as set out in the Lawless letter of October 31, 1955, namely,

"(a) No compensation to me unless such a permit is granted, or contract made with County for installation of improvement",

and argues that this language did not limit performance by Mr. Lawless to the obtaining of such a permit, but rather that it was the intent of the parties to obtain sewerage facilities so as to enhance the resale value of appellees' property, to the profit of all parties concerned. She also contends that the use of the disjunctive term "or" in paragraph (a) indicates the possibility of an optional plan, thus giving rise to an ambiguity.

Further ambiguity cited by appellant is the relationship of paragraph (a) to paragraph (c). Her interpretation of paragraph (c) is that it "presents a completely different and more comprehensive proposal from that in Section (a)", contemplating inclusion of the land of other owners and the construction of a different pumping station further down on Accotink Creek. Her argument is that since the trial court differed from her interpretation and concluded that whatever services were performed by Mr. Lawless fell under para-

graph (c), under which he would have no *claim* for compensation, it is manifest that section (c), as well as the contract as a whole, is susceptible to two meanings and is therefore ambiguous.

Appellant strongly contends that the ambiguities alleged by her require application of the rule that where the language of a written contract, used in its ordinary sense, is vague, doubtful or susceptible of more than one meaning, extrinsic evidence may be used to determine the intention of the parties, *Coopersmith v. Isherwood,* 219 Md. 455, 150 A. 2d 243 (1959), and that therefore the summary judgment should not have been granted. However, like the trial court, we find no substantial difficulty in ascertaining the meaning of the pertinent parts of the contract. In its opening paragraph Mr. Lawless proposed, in plain language, that he would make an effort to obtain permission from Fairfax County authorities for appellees to build a pumping plant and force main leading to the proposed county pumping station to be erected at Braddock Road and Accotink Creek. Paragraph (a) provided explicitly that Mr. Lawless should receive no compensation unless such a permit were granted, or a contract entered into with the County for installation of the improvement. It is not contended in the pleadings that either alternative in paragraph (a) ever occurred. We find no ambiguity here, nor do we find that the language used is in any sense vague or susceptible of more than one meaning. Where a contract is plain as to its meaning there is no room for construction and it must be presumed that the parties meant what they expressed. *Weber v. Crown, etc., Corp.,* 214 Md. 115, 132 A. 2d 857 (1957) ; *Strickler Eng. Corp. v. Seminar,* 210 Md. 93, 122 A. 2d 563 (1956).

It is to be noted that in her answer to a demand for additional particulars appellant specifically stated that she was relying on the entire contract except for paragraph (c). If any effect is to be given to that paragraph, it would appear to make clear that the meaning and effect of paragraph (a) were to provide for compensation as of right to Mr. Lawless only in the event of issuance of a permit for a pumping plant to appellees or construction of one by the county. It might be

that if paragraph (c) had not been included in the contract, appellant would have been in a position to argue that Mr. Lawless' successful effort in having the county adopt a policy permitting drainage by gravity amounted to substantial performance under the contract. However, it must be concluded that by the phraseology which he himself used in paragraph (c), Mr. Lawless put himself (and his estate) out of court with respect to any enforceable demand for compensation for services except under paragraph (a). Thus there results a situation where the value of appellees' property has been substantially enhanced by Mr. Lawless' efforts, for which appellees have chosen to deny compensation, as permitted by the literal language of paragraph (c).

Under the authorities, we are constrained to hold that the trial court correctly found no genuine dispute as to any material fact in connection with the contract.

### (2)

What we have said renders it unnecessary to give further consideration to appellant's contention that partial or substantial performance of the contract was established by the evidence. Where there exists no dispute as to material facts, and under those facts reasonable men may not arrive at different conclusions, the question of substantial performance becomes a matter of law for the court to decide. *Speed v. Bailey*, 153 Md. 655, 139 Atl. 534 (1927). We see no error in the trial court's finding that there was no substantial performance under the terms of this contract.

The motion for summary judgment was properly granted and the judgment must be affirmed.

> *Judgment affirmed; appellant to pay costs.*