## TRUSTEES OF THE BROADFORDING CHURCH OF THE BRETHREN *v.* WESTERN MARYLAND RAILWAY COMPANY

[No. 408, September Term, 1970.]

*Decided May 11, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Edwin H. Miller,* with whom were *Leo H. Miller* and *Miller, Miller & Kuczynski* on the brief, for appellant.

*Daniel W. Moylan,* with whom were *John H. Urner* and *Byron, Moylan & Urner* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This dispute over title to land, after almost ten years of undisturbed slumber in the office of the Clerk of the Circuit Court for Washington County, awakened refreshed and vigorous, and is now before us on appeal from a summary judgment entered in favor of Western Maryland Railway Company (Western Maryland) in an ejectment action which Western Maryland had first instituted in 1960.

When the granting of a summary judgment comes to us on review, if the facts are susceptible of more than one inference, the inferences must be drawn in the light most favorable to the person against whom the motion is made, *Lawless v. Merrick,* 227 Md. 65, 175 A. 2d 27 (1961), and in the light least favorable to the movant, *Howard Cleaners of Baltimore, Inc. v. Perman,* 227 Md. 291, 176 A. 2d 235 (1961) ; *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 155 A. 2d 691 (1959). The facts before the trial court were those alleged in the pleadings, and stated in the motion and the answer.

In 1912, Christian Ebersole and wife, the owners of a farm located near Charlton, in the Fourth District of Washington County, conveyed to the Western Maryland a 100-foot right of way containing 8.47 acres, which was used for the construction of a spur line which crossed the Potomac River.

In 1930, Elisha C. Dorsey acquired an undivided one-half interest and in 1948, the remaining one-half interest in the farm once owned by the Ebersoles. The deeds to Dorsey are not in the record, but it can be assumed that the right of way was excluded. It appears to be conceded that in 1936, the Western Maryland's bridge across the Potomac washed away and that in 1937 the tracks were removed from the right of way. Dorsey, in the plea which he filed in the ejectment case, alleged that he "entered onto and upon said land and enclosed the same and continuously and uninterruptedly ever since has actually used and occupied and exclusively, openly and notoriously possessed said land as his own with the knowledge of [Western Maryland]."

In 1963, Dorsey sold the farm to John E. Beavers and wife, who in 1966, sold it to Hartman Construction Company, which immediately reconveyed the property to James F. Tomes and William B. Wolf, Jr. The mesne conveyances to Beavers and Hartman specifically excluded the right of way; that to Tomes and Wolf did so by reference.

Dorsey survived his wife and died on 8 December 1967, leaving a will by which he devised the residue of his estate to the Trustees of the Broadfording Church of the Brethren (the Church).

In 1960, Western Maryland had brought an action in ejectment against Dorsey, alleging that he had been wrongfully in possession of the right of way since 1 June 1957, and claiming damages. Dorsey filed pleas, and in June, 1962, the case was dismissed for want of prosecution. There was a minimal amount of procedural skirmishing between 1967 and April, 1970, which accom-

plished little, since no one seems to have been aware that Dorsey had died.

In May, 1970, there was a burst of purposeful action. Western Maryland moved to "suspend the dismissal rule"; the court granted the motion, and scheduled the case for trial. Western Maryland added the Church, Tomes and Wolf as defendants, and filed an amendment to its declaration which simply recited what had happened since 1960. The new defendants filed pleas similar to those filed by Dorsey. Western Maryland moved for summary judgment, relying principally on the mesne conveyances already described. All three defendants answered, alleging that there was a genuine dispute as to material facts, summarizing the facts which we have recited, and denying that Western Maryland was entitled to judgment as a matter of law.

The trial court granted summary judgment against Tomes and Wolf on the ground that they could not succeed by "tacking" whatever rights Dorsey had by adverse possession in the absence of color of title, which they lacked because of the exclusion contained in their deed, relying on *Louis Sachs & Sons v. Ward*, 182 Md. 385, 394-95, 35 A. 2d 161 (1943) and *Fleischmann v. Hearn*, 141 Md. 463, 468, 118 A. 847 (1922), which we regard as controlling.

The court dealt with Dorsey somewhat differently, assuming for the purposes of its opinion that Dorsey had acquired title to the right of way by adverse possession, but concluding that he had lost it when he surrendered possession to Tomes' and Wolf's predecessor in title.

We do not see it quite that way. If Dorsey's pleas can be substantiated by competent testimony, he acquired title to the disputed right of way in 1957 by adverse possession, and if he did, from 1957 on, he held a title which he could have alienated by conveyance or devise.[1] The

---

1. In passing, we note that the critical date is 1937, when Dorsey is alleged to have taken possession of the right of way. The dates on which he acquired title to the Ebersole farm are in no way relevant to the issue of adverse possession.

circumstance that he specifically excluded the right of way in the deed to Beavers left title in him, *Fleischmann v. Hearn, supra,* 141 Md. at 468, which he did not lose by removing from the property, and could only have lost if the property were adversely possessed by another, *Doe v. Fletcher,* 37 Md. 430 (1873). See also, 3 *American Law of Property* § 15.14 at 828-30 (1952), which says, in part:

> "* * * It has even been stated that after the statute has fully run the title should be treated as having vested at the date of inception of the adverse possession. Whatever the date, having once vested it acquires the attributes of other vested titles in that it cannot be divested by parol abandonment, by the re-entry of the former owner, or by a failure to continue in possession."

We have recently had several occasions to comment on summary judgment procedure under Rule 610. In *Lipscomb v. Hess,* 255 Md. 109, 118, 257 A. 2d 178 (1969), we said:

> "The limitations on summary judgment procedure are too well known to require elaboration. It is not a substitute for trial but a hearing to determine whether a trial is necessary, *Whitcomb v. Horman,* 244 Md. 431, 224 A. 2d 120 (1966) ; *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563 (1956), when there is no genuine controversy, *Pullman Co. v. Ray,* 201 Md. 268, 94 A. 2d 266 (1953). The purpose of the hearing is not to determine disputed facts, but to determine whether such issues exist. *Horst v. Kraft,* 247 Md. 455, 231 A. 2d 674 (1967) ; *Carroccio v. Thorpe,* 222 Md. 38, 158 A. 2d 660 (1960) ; *Tellez v. Canton R.R. Co.,* 212 Md. 423, 129 A. 2d 809 (1957) ; *White v. Friel,* 210 Md. 274, 123 A. 2d 303 (1956)."

See also, *Hilton v. Williams,* 258 Md. 285, 265 A. 2d 746

(1970); *Ford v. Loret,* 258 Md. 110, 265 A. 2d 202 (1970); *Jordan v. Malloy,* 255 Md. 473, 258 A. 2d 182 (1969).

While it is true, as Western Maryland contends, that a general denial of a plaintiff's claim is not enough to show that there is a genuine dispute as to a material fact, *Tri-State Properties, Inc. v. Middleman,* 238 Md. 41, 207 A. 2d 499 (1965); *Evans v. Johns Hopkins University,* 224 Md. 234, 167 A. 2d 591 (1961); *Frush v. Brooks,* 204 Md. 315, 104 A. 2d 624 (1954), a showing of facts which would be admissible in evidence that there is a genuine dispute will prevent the granting of the motion, *Fishman Constr. Co. v. Hansen,* 238 Md. 418, 209 A. 2d 605 (1965); *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563 (1956). The latter was certainly the case here.

The Church thinks it was badly used when the court below reinstated a case which had been dismissed ten years previously. The short answer to this is that the point was not made below and cannot be raised now, Rule 885; *Schiller v. Lefkowitz,* 242 Md. 461, 219 A. 2d 378 (1966). Some solace may be found in the fact that under our view of the case, the Church will at least have an opportunity to try its case on the merits.

> *Order granting motion for summary judgment against Trustees of the Broadforording Church of the Brethren reversed; case remanded for trial; costs on appeal to be paid by appellee; costs below to abide the result.*