FREDERICK ZEHNER ET AL. *v.* LENA B. FINK

[No. 39, September Term, 1973.]

*Decided November 21, 1973.*

The cause was argued before THOMPSON, MENCHINE, DAVIDSON and MOORE, JJ.

*William J. Boehm* for appellants.

*George Meng,* with whom was *Thomas L. Starkey* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Lena B. Fink filed a trespass suit in the Circuit Court for Calvert County against Frederick Zehner, Mary Zehner and Eugene Zehner. The alleged trespass involved the use by the defendants-appellants, the Zehners, of a roadway running through the farm of Mrs. Fink, the plaintiff-appellee. The case was subsequently removed to the Circuit Court for St. Mary's County for trial. The trial judge, sitting without a jury, found for the plaintiff and assessed nominal damages of 1 cent. The Zehners by this appeal assert that the trial judge was clearly erroneous in finding that they had no prescriptive easement over the farm of the plaintiff-appellee.

The respective titles of the adjoining landowners were established mainly through oral testimony. While that testimony is not as clear as desirable, it is sufficient for us to decide the issues as presented.[1] It appears that Robert H. Norfolk in 1902 owned the 126 acre Fink farm and at least 80 acres of the Zehner farm. In 1919, he conveyed the Fink

---

1. On retrial counsel would do well to introduce the deeds in the chain of title into evidence.

property to his stepson, Leroy Trott, whose heirs, in 1949, conveyed the 126 acre farm to Lena B. Fink, the plaintiff, and William P. Fink her late husband, as tenants by the entireties.

The 80 acre tract was conveyed in 1926 by Norfolk to Arthur Gibson, who in 1927 conveyed to Warren Jones. About 1946, 55 acres of the 80 acre tract was conveyed by Jones to Joseph Suit. Jones conveyed the remaining 25 acres in 1949 to Joseph Suit. In 1955 Frederick Zehner and his parents acquired the 80 acre tract as well as other land from Joseph Suit. In 1957, Frederick Zehner, et al. conveyed the 25 acre portion of the tract to his brother, Eugene Zehner.

The plaintiff, Mrs. Fink, testified that she and her husband first occupied the property in 1950; at that time, a road ran through her farm, by her house and back to the Zehner line fence. Though understandably imprecise, she testified that during the years the width of the road had changed somewhat. Several other witnesses testified that, to the contrary, the road had not changed appreciably in width since 1920. She testified that she maintained the road until Mr. Frederick Zehner took over its maintenance in 1955. Soon after she and her husband moved on the property, Mr. Suit, the Zehners' predecessor in title, stopped by and asked her and her husband if he could use the road and she told Mr. Suit he could. At that time, two tenants on Mr. Suit's farm were also using the road.

When Mr. Zehner bought his property in 1955, he began to use and maintain the road. In 1960, Mrs. Fink asked him not to do so because he was grading it in a manner that was not suitable. She testified that the Zehners had used the property continuously from 1955 to date and that the Suits had used the road from the time of her purchase in 1949.

William Nelson Sipe, the plaintiff's son-in-law, testified that he had cut timber on the Zehner property in 1955 while working for his grandfather, who had purchased the timber from the owner. They requested permission to use the Fink's road. The road was more narrow then than now. Seven or

eight years ago, in 1962, he began farming the Fink property.

Frederick Zehner testified that, at the time he purchased his property, the road through the Fink's was in poor condition but that he started to maintain it. Mr. Fink worked with him and gravel was obtained from Mr. Fink's gravel pit; the road was wide enough for only one vehicle to pass through a banked area but that in other places, vehicles could pass with ease. He was able to move his 15 foot combine between the banks with difficulty. Mr. Zehner testified to his continuous use of the road from 1955 to date, to include getting his mail every day. The Finks used it as well to carry on their farm work. Frederick placed pipe under the road in 1957 to prevent future washouts but sometime later, it appears that the pipe was deliberately sealed with concrete and bricks. Since that time, the water flows across the road. Although Frederick had discussed the road with Mrs. Fink, he had never asked permission to use it; and although she never told him to stop using it, she had several times attempted to close it with barriers. At the time he purchased the property in 1955, the Fink road constituted the only means of access. In 1964, he acquired a 10 foot right of way through the Perry property which is washed out now and unusable except by foot.

J. Arthur Bowen, with the Soil Conservation Service, testified that since 1959 he has been familiar with the road which ran through the Fink property to Mr. Zehner's farm. He stated that the Fink road was shown on an aerial map of the Department of Agriculture taken in April 1938, which map was a part of their records kept in the usual course of business in his office.

Earl McKinsley Harper testified that he was a tenant on the Zehner property in 1946, when he rented it from Joseph Suit. During his tenancy, he used the Fink road, as did Mr. Warren Jones when he owned the Zehner property.

James Daniel Hoy testified he was 73 years old and had been familiar with the Fink and Zehner properties all of his life, that he first became familiar with the road in question

in the 1920's. He testified that when Mr. Norfolk owned the Zehner farm, he used the Fink road to get from his property to the state road.

William Clyde Schwallenberg testified that he had been familiar with the Fink-Zehner properties since about 1939. He used the road in 1945 or 1946, to plow for Mr. Suit and again in 1946 or 1947, to bale hay for Mr. Suit.

Eugene M. Zehner testified he acquired his 25 acre property in 1957, that he had used the Fink right-of-way ever since and that he had never spoken to Mrs. Fink. This was the only access to his property.

Henry Davis Brooks testified he was familiar with the two properties and the road in question; that he used to use the road in 1927 when a friend of his was living on the Zehner property. Mr. Brooks lived on the Zehner property from 1956 to 1960 as a tenant during which time he used the Fink road. He once lived on the Fink property for 7 or 8 months in 1955. There were no gates on the roadway.

Wilmer Carroll was the first rebuttal witness and testified as follows: In about 1945, he took his thrashing machine to the Suit property but he was unable to get it down the road on the Fink property. His combine was 13 feet in width and couldn't get through the gate posts but yesterday morning he was able to get a $13^1/_2$ foot disc through the road.

Owen N. Carroll also testified on rebuttal that he had been familiar with the road in question for many years. He worked for a Mr. Oden Lyons who lived on the Zehner property about 1940. Mr. Lyons got in and out of his property through the Fink property but that he had another exit also. There were four gates on the Fink road. In 1941 or 1942, the witness used the road to get to the Zehner property to sell fish.

Karl Lee Lumpkin also testified as a rebuttal witness. He was familiar with the road running through the Fink property; he first became familiar with it in 1935 when he

went through the Fink road to hunt on the Zehner property. He testified that he asked permission to use the road from the Finks after they acquired the property. Warren Jones used another road when he owned the 25 acres now owned by Eugene Zehner.

McKinley Brown also testified as rebuttal witness, he was familiar with the properties from the time when they both belonged to Mr. Norfolk about World War I. The main road was not through the Fink property but to the Warren Jones and Perry road. The Fink road had gates which were closed when there were stock in the field; otherwise they were open but that Mr. Norfolk used the road which is now on the Fink property.

Edward Freeland also testified, as rebuttal witness that he was familiar with the Fink property; that he lived on it for 7 years beginning in 1942; that he kept some horses and cows on the property; and that there were three gates on the road in question. At that time, the people living on the Zehner property used the Fink road.

Henry Brooks testified he helped Mr. Zehner and Mr. Fink work on the subject road, that the gravel came from Mr. Fink's pit. Mr. Fink had told Mr. Zehner he could get some gravel off of his pit and fix the road.

There is evidence that the road in question was used exclusively,[2] notoriously, actually and continuously under a claim of right since 1902 by the various owners of the Zehner farm, their tenants, their laborers and their visitors. The trial judge found the use was permissive and not hostile, and could not be tacked together to establish the required 20 years of adverse use.

The elements required to establish prescriptive easement

---

**2.** The mere fact that others used the road does not preclude the use from being exclusive in the legal sense. *Hendrix, Inc. v. Hanna*, 250 Md. 443, 243 A. 2d 600 (1968). On facts strikingly similar to the instant case, use by family, suppliers and customers of the appellees was held to be dependent on the appellees' right and not a use by the community or public at large, hence exclusive. *Id.* at 446. *See Shuggars v. Brake*, 248 Md. 38, 234 A. 2d 752 (1967) and *Cox v. Forrest*, 60 Md. 74, 80 (1883).

were recited in *Condry v. Laurie*, 184 Md. 317, 321, 41 A. 2d 66 (1945):

> "In order to establish an easement by prescription, it is necessary to prove an adverse, exclusive and uninterrupted use of the way for twenty years. Adverse use means use without license or permission. When a person has used a right of way for 20 years unexplained, it is fair to presume that the use has been under a claim of right, unless it appears to have been by permission."

Though the claimant bears the burden to prove all the necessary elements of prescription, a presumption of adverse use under claim of right may arise in his favor, ". . . when a person has used a roadway over the land of another openly and continuously and without objection for twenty years, it will be presumed that the use has been adverse under a claim of right, unless it appears to have been by permission. To prevent a prescriptive easement from arising from such use, the owner of the land has the burden of showing that the use of the way was by license inconsistent with a claim of right." *Wilson v. Waters*, 192 Md. 221, 227, 64 A. 2d 135 (1949).

The owner of the land across which the way runs (servient tenement) in order to rebut the presumption of adverse user must prove by affirmative evidence that the way was used with permission or license. The only specific reference to permission in the instant record consisted of the testimony of Mrs. Fink and her son-in-law as to what occurred in the 1950's, long after the prescriptive period may have run. While asking or receiving permission after the prescriptive period has run is of some value in determining the character of the prior use, the evidence in the instant case was clearly inadequate to support a finding that the prior use was permissive. *Dalton v. Real Estate & Improvement Co.*, 201 Md. 34, 50, 92 A. 2d 585 (1952); *Campbell v. Fletcher*, 37 Md. 430 (1873); 25 Am. Jur. 2d *Easements & Licenses* § 119, at 521 (1966); 28 C.J.S. *Easements* § 68, at 735-36 (1941).

The trial judge relied on the relationship of the parties,

that of stepfather (Norfolk) and stepson (Trott), to show the use of the road to be permissive when it began. This reliance was misplaced for two reasons: (1) in 1926, Norfolk conveyed to Gibson, who subsequently conveyed to Jones, thus any family relationship between the two owners of the farms terminated and (2) family relationship without more is insufficient to support a finding that the use at the time was with permission. *Phillips v. Phillips*, 215 Md. 28, 34, 135 A. 2d 849 (1957); *Dalton v. Real Estate & Improvement Co.*, 201 Md. at 44-45. We thus hold the trial judge's finding that the use was permissive to have been clearly erroneous.[2a]

The appellee's counsel, relying on authorities hereinafter discussed, argues that the holding of the trial judge should be sustained because the Zehner's chain of title did not specifically include a right of way over the Fink property; therefore, the use by prior owners could not be tacked in order to establish the requisite 20 year adverse use.

As to the 25 acre Eugene Zehner tract, the rule is clearly inapposite wherein adverse use has been shown to be exercised by one owner for a continuous period of 20 years. There was some evidence the road had been used by Warren Jones, a predecessor to the Zehner title, between 1927 and 1949. In *Barry v. Edlavitch*, 84 Md. 95, 115 (1896) the Court said:

> "Such was the nature of the easement Brannt acquired by his possession. It became consummate in his lifetime, and thereby also became appurtenant to his estate. It therefore passed by the several conveyances, to the successive owners, and is now in the appellee. Each deed in the chain of title conveys the building, rights and appurtenances thereto belonging; and even if this were not so, the easement being in fact appurtenant, would pass without the word appurtenant being used in the deed."

---

**2a.** The trial judge did not discuss the testimony concerning the oral grants and requests of permission, nor do we.

An easement appurtenant remains attached to the dominant tenement whether it is mentioned or not mentioned in subsequent conveyances of the dominant tenement. *Clayton v. Jensen*, 240 Md. 337, 214 A. 2d 154 (1965); 3 *Powell on Real Property* § 418, at 526.1-526.2 (1970); 2 *American Law of Property* § 8.71, at 282-83 (1952).

As to the 55 acre tract of land owned by Frederick Zehner and his surviving parent, Mary Zehner, it will be observed that Jones conveyed this tract to Suit prior to the time the 20 years had expired. Thus successive possessions by adverse users must be tacked together in order to satisfy the duration requirement.

To support the argument that tacking cannot be permitted, appellee relies primarily upon *Louis Sachs & Sons v. Ward*, 182 Md. 385, 35 A. 2d 161 (1943). He conveniently ignores the recent case of *Freed v. Cloverlea Citizens Association, Inc.*, 246 Md. 288, 228 A. 2d 421 (1967), which points out that in *Sachs* the court was referring to the record title in balancing the equities to determine the propriety of issuing an injunction.[3] *Freed* held there could be tacking even though the deed did not include the disputed land, when the disputed land is contiguous and possession thereof was transferred. *Freed* cited with approval *Tamburo v. Miller*, 203 Md. 329, 100 A. 2d 818 (1953):

> "The modern trend and the better rule is that where the visible boundaries have existed for the period set forth in the Statute of Limitations, title will vest in the adverse possessor where there is evidence of unequivocal acts of ownership." *Id.* at 297.

The other authorities relied on by appellee can also be readily distinguished. In *Fleischmann v. Hearn*, 141 Md. 463, 118 A. 847 (1922), the Court likewise was referring to the record title in weighing the equities to determine the

---

**3.** The facts of the *Sachs* case also show that most of the possession occurred when the possessor was a tenant of the owner of both tracts and thus the possession was not adverse.

propriety of issuing an injunction. In *Klein v. Dove*, 205 Md. 285, 107 A. 2d 82 (1954), not only was the Court balancing equities but adverse possession was specifically not an issue in the case. In *Trustees of Broadfording Church of the Brethren v. Western Maryland Railway Co.*, 262 Md. 84, 277 A. 2d 276 (1971), tacking was precluded because the claimant's deed expressly excepted the disputed land.

The rationale of tacking is perhaps best explained in *Gore v. Hall*, 206 Md. 485, 491, 112 A. 2d 675 (1955), as follows:

> "It is unquestionable that where different persons enter upon land in succession without any privity of estate, the last possessor is not allowed to tack the possession of his predecessors to his own, so as to make out a continuity of possession sufficient to bar the entry of the owner. The reason for this rule is that the possession of the one is not that of the other, because the moment the first occupant quits possession, the constructive possession of the owner is restored, and the entry of the next occupant constitutes him a new disseisor. On the other hand, where there is privity of estate between the successive parties in possession, the possession of such parties may be tacked so as to make the twenty years required by the Statute of Limitations. The law is clear that such privity may be created by a sale and conveyance and possession under it as well as by descent. *Hanson v. Johnson*, 62 Md. 25, 31, 32; 2 *Alexander's British Statutes, Coe's Ed.*, 612, 613."

In the instant case there was evidence that when the Zehners' predecessors in title delivered possession of the 55 acre tract of land, they also delivered the use and possession of the road in question thus establishing privity of possession, if not of title, to the road. It has been observed that the overriding weight of authority allows tacking, without much discussion of the reasons, when the transfer of a right of way, as opposed to a contiguous tract of land, is involved. Annot., 171 A.L.R. 1278, 1279 (1947). Maryland is

no exception. In addition to the cases cited therein, see *Furman E. Hendrix, Inc. v. Hanna, supra; Clayton v. Jenson, supra; Waters v. Snouffer,* 88 Md. 391 (1898).

We hold the trial judge was also clearly in error when he did not allow tacking of the Zehners' possession to that of their predecessors.

It will be observed that our decision is based upon continuous use by the Zehners and their predecessors. The trial judge in his findings, did not reach this question. As there is some conflict in the evidence, we remand the case for a new trial.

> *Judgment reversed.*
> *Case remanded for a new trial.*
> *Costs to abide results of new trial.*