## ALBERT S. OLSON v. JOHN BURK.[1]

May 5, 1905.

No. 14,244—(50).

**Adverse Possession.**

In order that adverse possession of land may ripen into title, there must be continuity of the adverse possession for the full statutory period.

**Acknowledgment of Owner's Title.**

An acknowledgment by the adverse claimant of the owner's title before the statute has run in his favor breaks the continuity of his adverse possession, and it cannot be tacked to any subsequent adverse possession.

**Agreement to Buy from Owner.**

The defendant in this, an action of ejectment, was in possession of the land in controversy, and, before the statute had run in his favor, entered into contracts with the owner of the land for the purchase thereof.

*Held*, that this was an acknowledgment of the owner's title, and broke the continuity of the defendant's alleged adverse possession, and, further, that the findings and decision of the trial court to the effect that the defendant had not acquired title to the land by adverse possession are sustained by the evidence.

**Evidence.**

The contracts for the purchase of the land were rightly admitted in evidence. There was no reversible error in the rulings of the court as to the admission of evidence.

Appeal by defendant from an order of the district court for Nicollet county, Webber, J., denying a motion for a new trial, after a trial and findings in favor of plaintiff. Affirmed.

*Davis & Olsen,* for appellant.

*A. A. Stone* and *A. R. Pfau,* for respondent.

START, C. J.

Action of ejectment to recover possession of government lots 3 and 4, and the southwest quarter of the northeast quarter of section 13, in township 110, range 28, in the county of Nicollet, this state.

The complaint is in the usual form for the recovery of the possession

[1] Reported in 103 N. W. 335.

of real estate and damages for withholding the same. The answer denied the plaintiff's title, and alleged title to the land to be in the defendant by adverse possession thereof for more than twenty-five years. The cause was tried by the court without a jury, and findings of fact and conclusions of law were made in favor of the plaintiff to the effect that the defendant had not acquired title to the land by adverse possession, but that the plaintiff was the owner thereof and entitled to its possession, and that judgment be so entered, with $135 damages. The defendant appealed from an order denying his motion for a new trial.

The defendant's assignments of error raise the general question, are the findings and decision of the trial court sustained by the evidence? The land in question is a part of the lands granted to the territory of Minnesota by the act of Congress approved March 3, 1857 (11 St. 195, c. 99), to aid in the construction of certain railroads. The plaintiff offered evidence showing that the land was duly certified to the state, and conveyed by it to the Winona & St. Peter Railroad Company, February 26, 1872, and that the railroad company on May 4, 1877, conveyed the land to the Winona & St. Peter Land Company, which conveyed it on February 1, 1901, to the plaintiff herein.

Objections and exceptions to the admission in evidence of the documentary evidence to prove the plaintiff's record title were made on the trial, and the rulings of the court in receiving the evidence are made the basis of several assignments of error. None of them, however, are discussed in the brief of counsel; hence they are waived. Dunnell, Minn. Pr. § 1800.

The evidence offered by the plaintiff established title in fee to the land in the plaintiff. Winona & St. P. Ry. Co. v. Randall, 29 Minn. 283, 13 N. W. 127.

It follows that, if the findings and decision of the trial court to the effect that the defendant has not acquired title to the land by adverse possession are sustained by the evidence, the question now under consideration must be answered in the affirmative.

The evidence tends to show that the defendant entered upon lot 4 in 1867, and lot 3 and the southwest quarter of the northeast quarter of section 13 in 1869, and commenced to improve and use the land, a large part of which was then covered with water, and that from the

time he so entered upon the land he has continued in the possession and use thereof to the present time. It is not necessary to go into details as to the character and extent of the defendant's possession of the land. It may be conceded, for the purpose of a decision of this appeal only, that, if the continuity of the defendant's alleged adverse possession was not broken by an acknowledgment of the true owner's title, the evidence is such as to require a finding that he acquired title to the land by adverse possession. In order that adverse possession may ripen into title, there must be continuity of the adverse possession for the full statutory period. An acknowledgment by the adverse claimant of the owner's title before the statute has run in his favor breaks the continuity of his adverse possession, and it cannot be tacked to any subsequent adverse possession. The limitation does not again begin to run against the party whose title is thus recognized, and those claiming under him, until the claimant repudiates such title. City of St. Paul v. Chicago, M. & St. P. Ry. Co., 63 Minn. 330, 336, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458; Sage v. Rudnick, 67 Minn. 362, 69 N. W. 1096; Wood, Lim. (3d Ed.) § 270, p. 637; 1 Cyc. 1014.

Acknowledgment of the title of the owner of the land, within the meaning of this rule, may be made in many ways—among others, by the acceptance of a lease or contract for the purchase of the land from the owner thereof. Now, the trial court found that the defendant entered into contracts with the owner of the land in this case whereby he agreed to purchase the land, and the owner agreed to convey it to him upon his payment of the purchase price. If the evidence with reference to the making of these contracts was rightly received, it is ample to establish an acknowledgment and recognition of the title of the owner to the land which would and did interrupt the continuity of the alleged adverse possession of the defendant. Johnson v. Peterson, 90 Minn. 503, 97 N. W. 384.

The first contract, designated in the record as Exhibit B, is dated March 29, 1873. The parties thereto are the then owner of the land, the Winona & St. Peter Railroad Company, party of the first part, and the defendant, the party of the second part. In and by this contract the party of the first part agreed to sell, and the defendant to buy, lot 4—a part of the land here in question—at the price and upon the terms therein stated. The contract contained a provision to

the effect that, if the defendant failed to make payment of the several instalments of the purchase price, the party of the first part should have the right to declare the contract null and void, and all rights of the defendant should cease. The second contract (Exhibit C) was dated May 16, 1876. The parties thereto were the Winona & St. Peter Land Company, party of the first part, and the defendant, party of the second part. In and by this contract the party of the first part agreed to sell, and the defendant agreed to buy, lot 3 and the southwest quarter of the northeast quarter of the land in controversy upon the terms therein stated, which were similar to those of Exhibit B. The last contract (Exhibit D) was dated May 28, 1890, and was between the same parties as Exhibit C, and similar in its terms. In and by this contract the land company agreed to sell, and the defendant agreed to purchase, all of the land described in the complaint in this action, upon the terms therein stated. Each of the contracts contains a recital of the payment of the first instalment by the defendant of the purchase price of the land, and there was other evidence tending to show that it was paid on one or more of the contracts.

The defendant admitted that he signed all three of the contracts. His claim as to Exhibit B is that before the expiration of the time for making the last payment, and on May 4, 1877; the vendor, the railroad company, conveyed the land therein described to the land company, whereby it divested itself of the title, which absolved the defendant of any further duty to it, and thereby made his possession adverse to the land company from its beginning. The obvious and conclusive answer to this claim is that the continuity of the defendant's adverse possession was broken at the time he entered into a contract with the owner of the land for its purchase, and the limitation of the statute would not again begin to run until he repudiated the title he had thereby acknowledged, and, further, that in no event could he tack his former adverse possession to such limitation. Again, the land company, as the grantee of the railroad company, succeeded to all the rights of its grantor in the land, and took it subject to all its obligations to the defendant, who was then in possession thereof.

It is further claimed that Exhibits B, C, and D were erroneously received in evidence for the reason that it was not shown that the persons purporting to execute them on behalf of the respective cor-

porations had any authority to do so. The contracts were all signed by the defendant, and whether they were admissible in evidence against him, for the purpose of showing an acknowledgment of the title of the true owner of the land, without proof of such authority, we need not consider, for we are of the opinion that there was sufficient evidence of the execution of the contracts by the corporations to justify their admission in evidence. The contracts purported to be executed by the respective corporations by their land commissioner or his agent. Written authority of the commissioner to execute the contracts for the corporations was offered, but it was rejected by the court. When Exhibits B and C were executed, the authority of an agent to make a contract for the sale of land was not required to be in writing. Brown v. Eaton, 21 Minn. 409; Laws 1887, p. 84, c. 26 (G. S. 1894, § 4215).

The defendant, by Exhibits B and C, acknowledged the title of the owner of the land, and his possession thereof then ceased to be adverse; and the evidence certainly would not require the trial court to find, as a matter of law, that the defendant repudiated such title and held the land adversely for fifteen years before the commencement of this action.

Exhibit D, then, which seems to have been a renewal of Exhibits B and C, was not essential to the defeat of the defendant's claim of title by adverse possession. The evidence, however, is ample that all three of the contracts were in fact executed by the authority of the respective corporations, and were thereafter recognized by them as their contracts.

It is also claimed that Exhibit C was not admissible in evidence because it was absolutely void, for the alleged reason that the vendor land company did not own the land when the contract was made, on May 16, 1876, and no power was conferred upon it by its articles of incorporation to enter into a contract for the sale of land it did not own. It is true, the vendor did not obtain its deed for the land until May 4, 1877, but whether it had previously contracted for the purchase of the land does not appear. The general nature of the business of the vendor, as declared by its articles of incorporation, was the purchasing, acquiring, and holding title to real estate, and bargaining, selling, conveying, and otherwise disposing of the same from time to

time. The only objection that can be urged against the right of the vendor to execute Exhibit C is the technical one that it could not make a contract to sell the land before it had obtained a deed therefor. This, however, was not forbidden either by the statute nor its articles of incorporation, nor was it contrary to good morals or public policy, and we are of the opinion that the vendor was bound by the contract. Again, long before the time fixed for the payment of the last instalment of the purchase price of the land, when the vendor was to make a deed thereof to the defendant, it had obtained its deed from the railroad company. We therefore hold that Exhibits B, C, and D, were each properly received in evidence.

We find no reversible errors in the other rulings of the trial court in the admission of evidence.

Order affirmed.