921 A.2d 869

**Andrew L. YOURIK**

v.

**Thelma R. MALLONEE.**

No. 0302 Sept. Term, 2006.

Court of Special Appeals of Maryland.

May 1, 2007.

Jeffrey L. Foreman (Bruce E. Kauffman, on the brief), Towson, MD, for Appellant.

William E. Seekford, Perry Hall, MD, for Appellee.

Panel: DEBORAH S. EYLER, ADKINS and SHARER, JJ.

ADKINS, Judge.

In this adverse possession dispute, mother and son are battling over the home where mother now lives—a residence that she has either occupied or rented to others for more than 40 years. After a bench trial, the Circuit Court for Baltimore County held that appellee Thelma Mallonee had established all the elements of adverse possession, including the requirement that the possession be "hostile," even though she has always acknowledged that her son, appellant Andrew L. Yourik, has

held a recorded deed to the property since 1964. Yourik appeals, raising a single issue for our review:

> May a person acquire title to property by adverse possession if she acknowledges that when she first took possession, and at all times thereafter, she has had actual knowledge that the legal title is in the name of her son?

We shall hold that a person who acknowledges legal title in a family member who abandoned the disputed property to foreclosure may occupy the property "hostilely" for purposes of acquiring that title by adverse possession.

## FACTS AND LEGAL PROCEEDINGS

The property in question is located at 1208 Narcissus Avenue. In 1964, shortly after Yourik married, Mallonee and her now deceased husband selected a house for the newlyweds. Mallonee made the downpayment and paid all settlement fees and recording costs; the balance of the purchase price was obtained by mortgaging the property. The deed to the property was titled in the name of Yourik and his wife Leonora, as tenants by the entireties.

Within a year, however, the Youriks had not only separated, but also had become delinquent in their mortgage, resulting in foreclosure proceedings being initiated. With Yourik's blessing, Mallonee and her husband "took over" the house and its mortgage. They paid the arrearage and continued making mortgage payments until that debt was paid in full. Meanwhile, Yourik moved to Baltimore City, never again living in the house, paying anything toward it, or receiving any income from it. At most, Yourik returned to the house for occasional holiday visits with the Mallonees.

Thus, beginning in late 1965 and continuing until trial in 2006, Mallonee either lived in the house or rented it out to others. She made all rental decisions without informing Yourik and kept all rental income. She and her husband paid all the taxes and utilities, and made all expenditures for upkeep, improvements, and repairs. Mr. Mallonee died two years

before trial; Ms. Mallonee lives in the Narcissus Avenue home by herself.

At trial, Mallonee admitted that she knew at all times that record title to the property remained in Yourik and his former wife Leonora. Leonora's interest did not concern Mallonee because, when Leonora moved out of the house in June 1965, she left a three page note stating that she was not coming back and did not want the house.[1] Mallonee and her husband "never asked" Yourik to "sign the house over" to them "because we knew he would one day. He said we'd do it."

Mallonee testified that on one occasion, during a neighborhood block party, the topic of transferring title was raised in the presence of Mallonee, her late husband, and Yourik. But Mr. Mallonee stated that he did not want to discuss it further during the party "because they were drinking." Instead, Mr. Mallonee told Yourik, "Come out the house and we'll talk." But Yourik "never come out the house. He never bothered." Mallonee also admitted that all property tax bills were sent in the name of Andrew and Leonora Yourik, and that the Mallonees never claimed any of their property expenditures as an income tax deduction because Mr. Mallonee said "you can't claim it if your name is not on it[.]"

Jennifer Yourik, appellant's daughter and appellee's granddaughter, testified that "[e]very time" Mallonee "talked about the house on Narcissus Avenue it was referred to as my father's house." According to Jennifer, although the Mallonees "took over the house" and rented it to others "when my father moved out," her grandmother said "it would always be my father's house.... My grandmother would always say, maybe one day it's going to be your house because it's your father's house." These statements were made during the 16 or 17 year period that Mallonee lived in another house in

---

1. According to Mallonee, "nobody knew where [Leonora] was at all these years" since she left in 1965, until Yourik "found her," apparently for the purpose of this lawsuit. Leonora then "signed her part of the house" over to Mallonee, telling her "that's your house and Mr. Mallonee's house."

Rosedale, when Mallonee was talking about what would happen after her death. Jennifer understood this to mean that, "if anything ever happened to my grandparents," "since I'm the only daughter the house would probably be willed to me .... [i]f something ever happened to my father after that." She also understood that her "grandmother was renting the house out for my father and collecting the rent on the house to pay the mortgage payment."

After trial, the court ruled in favor of Mallonee, concluding that Mallonee's occupation of the property was under "claim of ownership" even though it was not under "claim of title."

> Well, I don't think there's any question. **There's no claim of title. Mrs. Mallonee never claimed title. And if they were one in the same then she would lose. But the question is ownership.** Did she really think that she owned this property? .... Did they think it was theirs to do with as they wanted? And one looks at ... not what's said, but what's done. **They do everything with that property that a person who had the best legal title would do. They don't ask Mr. Yourik's permission to do anything.** There's no ... question in my mind that if they wanted to bulldoze the property ... they wouldn't have asked him, because he doesn't have anything to do with it. **In their minds, they own the property. They paid everything on it. They ... maintained it. They paid the taxes. They've paid the utilities. They rented it when they wanted. They lived in it when they wanted. They said who could live in it....** Mr. Yourik didn't have anything to do with that. They didn't consult with him ever as the owner of the property for thirty-five years. **They didn't ask his permission to do anything, because they didn't think they had to ...** He gave it up. He didn't pay the mortgage payments.... The property was going to be foreclosed upon. They took it over. (Emphasis added.)

The court explicitly rejected Jennifer Yourik's testimony that her grandmother said the house was "her father's" as grounds for denying Mallonee's claim for adverse possession.

Because [Mallonee] refers to this as ... Leo's house, so, that means she thought that Leo owned the house? Well, that's the way she described it. This is Leo's. Leo's house.... I don't dispute that she may have said to Jennifer, ... you know, when I'm gone it's going to be your house because your father doesn't have anything to do with it.... But he gave it up. So, we did everything. It was ours. And you know, who am I going to leave it to? Who is going to get it? Jennifer, you are. I don't dispute that that could have been said. But was it said with the view that Leo made the decisions about the house? I don't think so. By ... all the actions, there's nothing that was done that suggests that. **I don't believe that some deal was made by Mr. Yourik that hey, this is my house. But I'm going to let you rent it out. And the deal is, I keep the title, but you get the income from the house. I don't think that deal was made. I don't think that was even in Mr. Yourik's consideration. He wasn't in a position to make that deal.** Because ... the house was going to be foreclosed upon. He didn't have any ability to prevent that.... So I don't believe that was the intention. (Emphasis added.)

Finally, the court resolved that the dispositive legal issue of whether Mallonee's knowledge that Yourik's name remained on the deed precluded her acquiring title by adverse possession.

I believe that from the evidence I've heard ... that certainly this possession was actual, open, notorious, exclusive, hostile. And I believe it also was under a claim of ownership. Not title. I don't believe that.... **Ms. Mallonee knew that the deed existed. That had never been changed. But .... I think what you need is you believe you own the property.... [I]f you believe that there is a superior title and you claim a title then you can't claim by adverse possession.... But we're not talking about title here. We're talking about ownership.... Ownership is having the right to exercise control over it.** Dominion over it. Make decisions about. Do things with. And I really think that the Mallonees thought that they had

that ... right .... [T]hey acquired ... legal title to the property by adverse possession. (Emphasis added.)

## DISCUSSION

"Adverse possession is a method whereby a person who was not the owner of property obtains a valid title to that property by the passage of time." *Md. Civ. Pattern Jury Instr.* 2:1 (MPJI–Civ.). "A number of policy justifications for the doctrine of adverse possession have been advanced." Herbert T. Tiffany & Basil Jones, *Tiffany Real Property*, Neighbor § 6:2 (1975, through Sept. 2006) (hereafter cited as *"Tiffany "*). Most commonly, "courts justify the existence and application of adverse possession" for one or more of the following reasons:

> First, there is a societal interest in "quieting" title to property by cutting off old claims. Second, there is a desire to punish true owners of land who neglect to assert their proprietary rights. Third, there is a need to protect the reliance interests of either the adverse possessor or others dealing with the adverse possessor that are justifiably based on the *status quo*. Last, an efficiency rationale, asserting a goal of promoting land development, seeks to reward those who will use land and cause it to be productive.

*Id.*

Under Md.Code (1974, 2003 Repl.Vol.), section 14–108(a) of the Real Property Article (RP), governing quiet title actions,

> [a]ny person in actual peaceable possession of property, ... **either under color of title or claim of right by reason of his ... adverse possession for the statutory period,** when his title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property, ... the person may maintain a suit in equity in the county where the property lies to quiet or remove any cloud from the title, or determine any adverse claim. (Emphasis added.)

Maryland case law frequently includes language requiring the adverse possessor to "show that such possession was

actual, notorious, exclusive, ***hostile, under claim of title or ownership,*** and continuous or uninterrupted for the period of twenty years." *Gore v. Hall,* 206 Md. 485, 490, 112 A.2d 675 (1955) (emphasis added); *see Banks v. Pusey,* 393 Md. 688, 709 n. 11, 904 A.2d 448 (2006); *Hungerford v. Hungerford,* 234 Md. 338, 340, 199 A.2d 209 (1964); *White v. Pines Community Improvement Ass'n,* No. 2652, Sept. Term 2005, 173 Md.App. 13, 917 A.2d 1129, 2007 WL 656575, *14 (2007).

The requirement that a would-be adverse possessor must establish that she occupied the land under "claim of title or ownership" is our sole focus in this appeal. The trial court concluded that Mrs. Mallonee could satisfy this requirement by establishing either a "claim of title" *or* a "claim of owner-ship," and that she had proven a claim of ownership. For that reason, the court held, Mallonee's acknowledgment that Your-ik held title to the property from the time she took possession of it did not preclude her adverse possession claim as a matter of law. Yourik argues this was error, because "an adverse possession claim cannot be sustained where the person claim-ing adverse possession admits title in another." Although we found no Maryland precedent specifically addressing this question, our review of established principles governing ad-verse possession persuades us that adverse possession is possible in this commonly occurring scenario.[2]

---

**2.** The standards governing appellate review of a judgment quieting title on an adverse possession were set forth by Judge Hollander in *Porter v. Schaffer,* 126 Md.App. 237, 259, 728 A.2d 755, *cert. denied,* 355 Md. 613, 735 A.2d 1107 (1999):

As this case was tried without a jury, we review the case both on the law and the evidence. Md. Rule 8–131(c). We will not "set aside the judgment of the trial court on the evidence unless clearly errone-ous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." The court's findings of fact are not clearly erroneous if they are supported by substantial evi-dence. In making this determination, "we may not substitute our judgment for that of the fact finder, even if we might have reached a different result." Rather, "we must assume the truth of all the evidence, and of all the favorable inferences fairly deducible there-from, tending to support the factual conclusions of the lower court."

The clearly erroneous standard does not apply to the trial court's conclusions of law, however. Thus, "[p]ure conclusions of law are

In *Dean v. Brown*, 23 Md. 11, 1865 WL 1942, *3 (1865), the Court of Appeals stated:

> The rule at law, as well as in equity, established by an unbroken course of authority, is, that **possession, to be adverse, must be accompanied with a positive and exclusive claim of the entire title, and if the title claimed be subordinate to, or admits the existence of a superior title, the possession will not be taken as adverse to that title;** nor does it matter how long such a possession may be continued, for it can have no effect in the way of barring the legitimate title. (Emphasis added.)

Yourik misconstrues this language, along with the oft-repeated test that adverse possession claimants must occupy the property "under claim of title or ownership," to mean that adverse possession can never be established by a claimant who occupies the property with knowledge that another person has legal and/or record title. This interpretation rests on Yourik's misunderstanding of the terms "claim of title," "color of title," "claim of ownership," and "claim of right," all of which are alternative methods of proving that the claimant's possession was sufficiently "hostile" to be "adverse."

 As a first step in sorting through the semantics, we observe that "color of title" has a narrower meaning than "claim of title." "Color of title is that which in appearance is title, but which in reality is not good and sufficient title." *Gore*, 206 Md. at 490, 112 A.2d 675. When adverse possession is premised upon a deed or other instrument believed to convey title, but does not, whether because the instrument is invalid or otherwise fails to convey the claimed interest, that instrument will "give color" only if it is *"prima facie* good in appearance [so] as to be consistent with the idea of good faith on the party entering under it." *Id.* at 490–91, 112 A.2d 675.

---

not entitled to any deference." Moreover, we review the trial court's application of the law to the facts on an abuse of discretion standard. (Citations omitted.)

■ Yet the established rule, followed in Maryland, is that proof of color of title is not necessary to establish adverse possession.

Color of title is not an element of adverse possession unless made so by statute, as under provisions prescribing a shorter period of limitation than would otherwise be required.

While there are a few isolated judicial statements broadly to the effect that color of title, or color of right, is essential to adverse possession, the general rule is well established that, in the absence of contrary statute, color of title is not an essential element of adverse possession and that entry and possession under claim of right, ownership, or title are sufficient.

2 C.J.S. *Adverse Possession* § 72 (footnotes omitted). *See also* 4 *Tiffany, supra,* Adverse Possession § 1147 (distinguishing "color of title," which "refers to asserting title through an instrument that appears to convey title, but in actuality does not," from "claim of title," which more broadly "reflect[s] an intention to assert ownership over the property and claim it as one's own").

Under Maryland law, there is only one statutory limitation period for adverse possession, and it is the same 20 years that has always governed actions to quiet fee simple title based on adverse possession. *See* RP § 14–108(a); Md.Code (1974, 2006 Repl.Vol.), § 5–103(a) of the Courts & Judicial Proceedings Article. As the disjunctive in RP section 14–108(a) indicates, the legislature has decided that a claimant may establish adverse possession by proving "either ... color of title *or* claim of right." (Emphasis added.) Thus, as this Court long ago recognized, "[c]olor of title is not a prerequisite to continuance of adverse possession, it [is] at most a preferred proof." *Mayor of New Market v. Armstrong,* 42 Md.App. 227, 242, 400 A.2d 425, *cert. denied,* 286 Md. 754 (1979).

Mallonee never asserted color of title. Rather, the trial court determined that she established a "claim of ownership,"

distinguishing this type of claim from one based on "claim of title," apparently meaning "color of title." We therefore proceed to examine whether that was error.

Language in the case law proclaiming a claimant's obligation to assert both a "hostile" possession and a "claim of title or ownership" explains why the parties and the court examined these as separate requirements in proving adverse possession. To clarify the "adversity" necessary to establish adverse possession in Maryland, we observe that, whether an occupant asserts that her adverse possession occurred under color of title, claim of title, claim of ownership, or claim of right, these are merely alternative descriptions of how the occupant contends she has satisfied the "hostility" element of adverse possession.[3] As one treatise writer explains,

> [i]t has been asserted, by many of the courts in this country, that in order that the statute of limitations may run in favor of one in possession of land, the possession must be under claim of right or title.... There would seem to be reason to doubt, however, whether, in asserting this requirement, the courts ordinarily have in mind anything more than a restatement of the requirement of hostility of possession. They do not ordinarily undertake to explain why a claim of title on the part of the possessor is necessary, and it appears that the rightful owner is quite sufficiently protected by the requirement of adverseness or hostility of possession.

4 *Tiffany, supra,* § 1147 (footnotes omitted). Thus, a "claim of title or ownership" is not a separate and distinct element of

---

**3.** Although this appeal does not require that we address the "possession" necessary to establish adverse possession in Maryland, we note that whether a claim is made under color of title or claim of right also affects how the occupant satisfies the "actual possession" element of adverse possession. Specifically, when a claim is made under color of title, the extent of the possession is presumed to encompass all land covered by the paper title, whereas when a claim is made without color of title, the extent of the possession must be proved by actual occupation of the land. *See, e.g., Costello v. Staubitz,* 300 Md. 60, 68, 475 A.2d 1185 (1984) ("Generally, adverse possession without color of title extends only to the land actually occupied").

an adverse possession claim, in addition to hostility. *See, e.g.,* MPJI–Civ. 2:1 (requiring a showing that possession was hostile, without mentioning a claim of title, ownership, or right); *Barnes v. Milligan,* 196 Neb. 50, 241 N.W.2d 508, 511 (1976) (the terms "claim of right," "claim of title," and "claim of ownership" simply mean "hostile").

The plethora of phrases used to identify what are simply two different evidentiary ways to prove hostility may confuse rather than clarify. As the Supreme Court pointed out,

> misapprehension arises from the somewhat misleading, if not inaccurate, terms frequently used, such as "claim of right," "claim of title," and "claim of ownership." "These terms, when used in this connection, mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others."

*Guaranty Title & Trust Corp. v. United States,* 264 U.S. 200, 204–05, 44 S.Ct. 252, 253, 68 L.Ed. 636 (1924) (citations omitted). *See generally* 3 Am.Jur.2d Adverse Possession § 96 (same). Using "claim of title" to describe this concept "is most unfortunate" because it too often suggests "something entirely different" from the "exclusion of all others" concept, including the incorrect notion that the occupant must have a good faith belief that she has some "title" that afford her a legal right to occupy the property. *See* 4 *Tiffany, supra,* § 1147.

To avoid misunderstanding, then, we shall distinguish between these alternative proofs, using the language of RP section 14–108(a) to label a particular claim as either "under color of title" or "under claim of right." We cannot conceive of a "hostile" circumstance that could not be adequately characterized by one of these two terms.

■ When an occupant's "claim of title" arises from an assertion of ownership based on defective "paper title" or a mistake as to the location of a property boundary specified in a deed, this species of hostility is more narrowly described as "color of title." By color of title, we mean that the occupancy rests on an instrument purporting to convey an interest in the

property, although that instrument is not valid for that purpose, either because the instrument is not effective or because it does not convey title to the disputed property. *See Gore,* 206 Md. at 490–91, 112 A.2d 675; 4 *Tiffany, supra,* § 1147.

■ On the other hand, when the occupant's "claim of title" arises from her intention to assert ownership over the property and claim it against the title holder and world, without any assertion of "paper title" or any mistake as to boundary lines, this species of hostility is effectively differentiated from the former as a "claim of right." By claim of right, then, we mean that the occupancy rests on the claimant's demonstrated "intention to appropriate and hold the land as owner, and to the exclusion, rightfully or wrongfully, of every one else." *Guaranty Title & Trust Corp.,* 264 U.S. at 204–05, 44 S.Ct. at 253.

■ These clarifications aid us in answering the specific question presented by Yourik—whether one who acknowledges that another holds a recorded deed to the disputed property may establish the requisite hostility "under claim of right." We found no Maryland case explicitly addressing this issue.[4] Instead, the answer may be deduced as a logical corollary to the rule that a claimant may establish hostility by asserting a claim of right, rather than color of title.

■ In establishing the hostility of a particular use, a showing that the use has been made " 'openly, continuously,

---

4. In some cases, this acknowledgment of title in another question did not arise because the adverse possession claim was premised on color of title, and therefore the claimant believed she had title. *See, e.g., Gore v. Hall,* 206 Md. 485, 491, 112 A.2d 675 (1955)(claimant asserted color of title based on recorded deeds); *Freed v. Cloverlea Citizens Ass'n,* 246 Md. 288, 228 A.2d 421 (1967) (claim based on mistake as to boundary of deeded property); *Siejack v. Baltimore,* 270 Md. 640, 313 A.2d 843 (1974)(claimant occupied under deed). Mallonee also cites language from *Bratton v. Hitchens,* 43 Md.App. 348, 405 A.2d 333 (1979), and *Miklasz v. G.W. Stone, Inc.,* 60 Md.App. 438, 483 A.2d 382 (1984), *cert. denied,* 302 Md. 570, 489 A.2d 1129 (1985). Neither case, nor any other cited case, adjudicates a comparable claim of hostility arising after mortgage default, by an occupant who explicitly acknowledges title in another, or otherwise suggests that such acknowledgment bars a claim for adverse possession as a matter of law.

and without explanation for twenty years,' " justifies a presumption that such use was adverse. *See Banks*, 393 Md. at 699, 904 A.2d 448. The court need not find that the occupant specifically intended to oust the title holder at the time the occupancy began, because "the fact that the possession is due to inadvertence, ignorance or mistake, is entirely immaterial." *Tamburo v. Miller*, 203 Md. 329, 336, 100 A.2d 818 (1953); *Miceli v. Foley*, 83 Md.App. 541, 555, 575 A.2d 1249 (1990). Thus, Maryland courts have long recognized that the hostility necessary to make an occupancy or use adverse "does not necessarily import enmity or ill will." *See Hungerford*, 234 Md. at 340, 199 A.2d 209.

 Rather, the term "hostile" signifies a possession that is adverse in the sense of it being "without license or permission," and "unaccompanied by any recognition of ... the real owner's right to the land." *See id.* (citing 4 *Tiffany*, *supra*, § 1142); *Mavromoustakos v. Padussis*, 112 Md.App. 59, 65, 684 A.2d 51 (1996), *cert. denied*, 344 Md. 718, 690 A.2d 524 (1997). The type of "recognition of right" that destroys hostility is not mere acknowledgment or awareness that another claim of title to the property exists, but rather, *acceptance* that another has a *valid right* to the property, and the occupant possesses subordinately to that right. *See Am. Heritage College Dictionary of the English Language* 1460 (4th ed. 2000) ("recognition" may mean either a mere showing of awareness, as in recognizing a person in the audience, or an acceptance of something as valid, as in recognizing a person's right to something). Thus,

> where the original entry and subsequent occupancy of land was under a contract, or with the consent or permission of the owner, the possession would not be hostile or adverse and could not evolve into a subsisting title on which record could be had, unless the record owner had notice that the continuing possession was under a claim of right, since it is the intent with which possession is continued that gives it its character as adversary. Moreover, since an original permissive possession is presumed to continue, there can be no

change to an adversary possession in the absence of affirmative evidence of that fact.

*Hungerford,* 234 Md. at 341, 199 A.2d 209 (citations omitted).

If, in order to establish hostility, "the person in possession must state that the land belongs to him," as Yourik posits, "the effect would be . . . to limit the operation of the statute of limitations to the case of possession by one who believes himself to have title[.]" 4 *Tiffany, supra,* § 1147. As a practical matter, then, the consequence of holding that a claimant who acknowledges that someone else holds title to the property she is occupying would be that occupants who do not assert color of title could rarely, if ever, acquire property by adverse possession.

Such a result would be inconsistent with the language of RP section 4–108(a), which permits adverse possession based on a "claim of right" in addition to "color of title." That result is equally inconsistent with Maryland decisions upholding adverse possession by claimants who did not assert color of title, but rather occupied the property with knowledge of another's title. *See, e.g., Blanch v. Collison,* 174 Md. 427, 437, 199 A. 466 (1938) (affirming adverse possession judgment by foreclosure sale purchaser who took possession "with the intent to claim against the owner of the legal title and the owner of the equity of redemption"); *Zehner v. Fink,* 19 Md.App. 338, 347, 311 A.2d 477 (1973) (claimant who established hostile possession without color of title could establish prescriptive easement).

As the *Restatement (First) of Property* (1944, database updated through 2007) explains:

> To be adverse it is not essential that a use be hostile. **It is not necessary that it be made either in the belief or under a claim that it is legally justified. It is, however, necessary that the one making it shall not recognize in those as against whom it is claimed to be adverse an authority either to prevent or to permit its continuance.** It is the non-recognition of such authority at the time a use is made which determines whether it is adverse. . . . The

fact that it is made in recognition of such an authority existing in one person will not prevent it from being adverse to another. . . . **A use which is not made in recognition of and in submission to a present authority to prevent it or to permit its continuance is adverse though made in recognition of the wrongfulness of the use and, also, of the legal authority of another to prevent it. Thus, one who uses the land of another in defiance of the owner is none the less [sic] an adverse user though he admits his lack of legal justification in making the use.** . . . The essential quality is that it be not made in subordination to those against whom it is claimed to be adverse. Yet **he who claims a right in himself is impliedly asserting an absence of any right in another inconsistent with the right claimed. Hence one who uses under a claim of right in himself is denying a use by the permission of another.** Quite commonly, therefore, the absence of submission to another is evidenced by the fact that the one making the use did so under an affirmative claim of right in himself.

*Id.*, § 458 cmt. c, cmt. e (emphasis added).

Moreover, there is a sound policy reason to reject Yourik's broad contention that adverse possession cannot be established by a person who acknowledges title in another. Requiring a claimant to assert that she holds legal or record title to the property that she is attempting to occupy adversely, "even though she knows [that] to be false, involves the placing of a premium upon dishonesty, in contravention of the ordinary judicial policy." 4 *Tiffany, supra,* § 1147.

We are not persuaded by Yourik's contention that *Dean* and *Hungerford* require a different result. His argument rests on several of the misconceptions examined above. Yourik mischaracterizes Mallonee's recognition of his record title as an admission that he has "superior title." The trial court found that Mallonee occupied the property under claim of right, by exercising an owner's rights and privileges with the intention of acquiring title against Yourik, who effectively disclaimed his interest in the property by letting the Mallonees cure the mortgage default and "take it over" for the next 40 years. On

this record, there was sufficient evidence to support the court's finding that Mallonee's possession was not permissive.[5] Thus, Mallonee did not "admit the existence of a superior title" in a manner that prevented her occupancy from being hostile as a matter of law.

Nor do we agree with Yourik that *Hungerford v. Hungerford,* 234 Md. 338, 340, 199 A.2d 209 (1964), compels us to reverse the judgment in favor of Mallonee. To the contrary, that case serves as a foil to illustrate the circumstantial differences between permissive and hostile occupancies by family members.

Nathaniel Hungerford received a life estate in a 50 acre farm, with the remainder to his sons Nathaniel Jr. and Henry. Henry and another son, William, staked out a lot, which Henry then promised to convey to William in exchange for William working the land for Henry. William continued to work that land from 1922 until 1964, building a house on it where he and his family lived continuously. William asked Henry for a deed to this lot on several occasions, but never received one. The Court of Appeals held that William's possession was not adverse. *See id.* at 341, 199 A.2d 209.

Although the *Hungerford* Court recognized that "the claimant's possession [must] be unaccompanied by any recognition, express or inferable from the circumstances, of the real owner's right to the land," *id.,* Yourik's reliance on this language is misplaced. As discussed above, we do not construe this description of hostility as authority for the proposition that a claimant's acknowledgment of title constitutes the type of "recognition ... of the real owner's right to the land" that precludes adversity of possession. The dispositive question that Yourik begs by declaring that Mallonee's acknowledgment equates to such recognition is whether she believed that Yourik could prevent her from occupying 1208 Narcissus

---

**5.** Indeed, Yourik does not argue to this Court that the trial court's factual finding was clearly erroneous. His challenge is based solely on the legal argument that Mallonee's acknowledgment of his title prevented her from establishing adverse possession as a matter of law.

Avenue, or that it was by Yourik's authority that she exercised ownership rights there. Yet the trial court found that Mallonee's occupancy was not permissive, given that Mallonee and her husband did not "ask [Yourik's] permission to do anything, because they didn't think they had to.... The property was going to be foreclosed upon. They took it over."

In this critical respect, this case differs from *Hungerford.* Although both William and Mallonee claimed an oral agreement with the "real owner," who was a family member, the trier of fact reached different conclusions regarding the significance of those agreements. Unlike Mallonee, William did not occupy the property in the unilateral belief that he owned it, but rather on the mutual understanding that he was earning it from "the real owner" over time. William and Henry agreed that William could occupy the property rent-free in exchange for his work, which both considered to be the contract price for purchase of the property. As a result, the trial court found that William's possession was with the consent and permission of the title holder, making his occupation permissive rather than under claim of right.

In contrast, Mallonee did not occupy 1208 Narcissus Avenue in the belief that her son owned it, or under the terms of a contract that required her to earn her interest over time. The trial court decided that any agreement by which Yourik would "sign over" the deed did not signify that Mallonee considered her possession to be permissive, because Yourik had relinquished his ownership rights in the face of foreclosure. Instead, Mallonee made all mortgage payments, tax payments, repairs, and occupancy decisions on her own behalf, while keeping all rental income for the property for herself. On this record, there was substantial evidence for the court's finding that Mallonee's occupancy was under claim of right.[6]

---

6. For similar reasons, we are not persuaded by the cases Yourik cites from other jurisdictions for "[t]he principle that acknowledgment of the actual title holder defeats a claim for adverse possession[.]" *See, e.g., Guitar v. United States,* 135 F.Supp. 509 (N.D.Tex.1955) (a single acknowledgment of other's title will be "fatal to the claim" for adverse possession of personal property); *Shanks v. Collins,* 782 P.2d 1352,

1355 (Okla.1989) ("acknowledgment by an adverse possessor of title in another is evidence tending to show that his claim was not truly adverse"); *Inhabitants of Town of Island Falls v. A.K.R., Inc.,* 157 Me. 147, 170 A.2d 395, 398 (1961) ("plaintiff cannot claim title by adverse possession, and at the same time recognize the title in one from whom it claims"); *Olson v. Burk,* 94 Minn. 456, 103 N.W. 335, 337 (1905) (acknowledgment of title bearing continuity of possession precluded adverse possession); *Walling v. Przybylo,* 24 A.D.3d 1, 804 N.Y.S.2d 435, 437 (2005) ("the possessor's overt acknowledgment that another holds title ... will defeat a claim for adverse possession because then it 'is not a claim in utter hostility to true title' "), *aff'd,* 7 N.Y.3d 228, 818 N.Y.S.2d 816, 851 N.E.2d 1167, 1168 (2006) ("actual knowledge that another person is the title possessor does not, in and of itself, defeat a claim of right by an adverse possessor"). Despite apparently helpful language, none of these cases presents an analogous factual scenario involving a title holder who abandoned the property to foreclosure stepping aside forever while the occupant "takes over" all financial and ownership duties associated with the property. Nor does any offer a persuasive legal justification for adopting the sweeping rule advocated by Yourik.