REPORTED

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 0005

September Term, 2014

GUY NIMRO

v.

JANE W. HOLDEN, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF DAN WESTLAND

Krauser, C.J.,
Kehoe,
Rodowsky, Lawrence F.
 (Retired, Specially Assigned),

JJ.

Opinion by Rodowsky, J.

Filed: February 27, 2015

Maryland Code (1974, 2012 Repl. Vol.) , § 8-103(a) of the Estates and Trusts Article (ET) is a nonclaim statute. *Imbeski v. Carpenter Realty*, 357 Md. 375, 377, 744 A.2d 549, 550 (2000). In relevant part it provides:

"**§ 8-103. Limitation on presentment of claims.**

"(a) *In general.* – Except as otherwise expressly provided by statute with respect to claims of the United States and the State, all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates:

"(1) 6 months after the date of the decedent's death[.]"

The principal question here is: When record title to realty devolves upon a personal representative after the twenty-year period for the transfer of title by adverse possession, or for the acquisition of a prescriptive easement, are such interests extinguished under § 8-103(a) by the failure of the alleged adverse possessor/user to file a claim in the estate proceedings asserting ownership of those interests? In an action to quiet title, the Circuit Court for Anne Arundel County held, on a motion titled, "to Dismiss," that that was the effect of § 8-103(a) because the assertion of rights allegedly acquired by adverse possession or prescription was a "claim" within the meaning of § 8-103(a). For the reasons hereinafter set forth, we disagree and shall reverse.

At issue are the rights in lots 84 through 87 and 1 through 3 as shown on the plat of Fairview-Section One, dated January 1933, recorded among the land records of Anne Arundel County in Plat Book FSR No. 3, folio No. 76. When the instant action was initiated in September 2013, the appellee, Jane W. Holden, as personal representative of the Estate

of Dan D. Westland, held record title to the disputed property. The appellant, Guy A. Nimro, owns lots 80-83.

Attached to Nimro's complaint are copies of conveyances and of the plat of Section One of Fairview. The east side of Fairview faces Herring Bay and lots 1 through 3 abut the water. They lie on the east side of a north-south street, Shore Drive. Between Shore Drive and the water, to the north of lots 1-3, is a way from that street to the water. Lots 87 through 80 are in a block of lots extending from the west side of Shore Drive in a westerly direction. That block is bounded on its north side by South Drive, an east-west street. Lot 87 is at the corner of Shore Drive and South Drive. Lot 84, the western end of the disputed property, abuts the eastern side of lot 83, the east end of the Nimro property. Thus, the disputed property lies between the Nimro property and the water. Other exhibits to the complaint indicate that the disputed property is unimproved.

The record consists of the complaint and its attached exhibits, and both an answer and a motion to dismiss. To the latter is attached a copy of the docket entries from the Orphans' Court for Anne Arundel County in the Westland estate. The purpose of producing the docket entries was to get before the court the negative fact that Nimro had not filed a claim against the Westland estate. That exhibit had the effect of converting appellee's motion to dismiss into a motion for summary judgment. Maryland Rule 2-322(c). Consequently, we shall restrict our review to the ground of decision relied upon by the circuit court.

The Nimro exhibits show that appellant acquired lots 80-83 by a deed dated June 29, 1990, from Mildred Bloom, who acquired title in her own name in February 1987. Mildred's title was acquired after the death of the survivor of Loren A. and Madge T. Bloom, who had acquired lots 81-83 in 1946 and lot 80 in 1952. The deed to Nimro does not expressly convey any rights of the grantor in the disputed property. Dan Westland had acquired the disputed property as a gift, by deed from his mother in 1989. She had acquired the disputed property in 1978.

The complaint alleged in Count I that "[f]or more than twenty (20) years Plaintiff and his predecessors in title have been in open, exclusive, hostile, adverse and actual possession under a claim of right" to the disputed property. Count II alleged that "since 1952, the Plaintiff ... and his predecessors in title have used the property for more than twenty years ... as an extension of Plaintiff's front yard, unobstructed sight line to Herring Bay and ingress and egress to the beach are [*sic*] on Herring Bay." There is no allegation that the Blooms or Nimro enclosed or built on the disputed land. The complaint alleged, and the estate exhibit shows, that Dan Westland died February 13, 2006.

The circuit court ruled:

> "Based upon the Plaintiff's claim, claiming adverse possession, he's claiming that he and his predecessors-in-title have either adverse possession or the prescriptive easement, as existed for 20 years, and it also relates to the predecessors.
>
> "Clearly in 2006, that claim existed that it is a legal basis that no claim was made against the property; no claim was made against the estate. On that basis, the Court will grant the Motion to dismiss."

- 3 -

# I

## *A Preliminary Issue*

This is a dispute about the date on which the applicable twenty year period is alleged to have begun. Count II (adverse user) clearly avers 1952 while Count I (adverse possession) is silent on the start date. "It is the Appellant's position that he has asserted dominion over the properly [*sic*] in question since 1990 when he purchased the property and that his predecessor in title had done so." Appellant's Brief at 4. If the start date is in 1990, the twenty year period would not run until sometime in 2010, four years after the decedent's death. With that start date, § 8-103 literally would not apply.

The circuit court, however, construed the ambiguity in the complaint adversely to the pleader. *Read Drug Chemical Co. v. Colwill Construction Co.*, 250 Md. 406, 243 A.2d 548 (1968). It considered the twenty year period to have run by 2006. That is the way that the issue comes to us. Accordingly, we are to consider that the twenty year period began during the Blooms' ownership of the present Nimro lots. The circuit court assumed that any rights held by the Blooms in the disputed property passed to Nimro through the 1990 conveyance of the present Nimro property. The appellee's argument does not question on legal grounds that step in Nimro's assertion of title to, or an easement over, the disputed property.

### *The Parties' Contentions*

Nimro submits that he "is not making a claim against the estate."  Appellant's Reply Brief and Appendix at 4.  Rather than seeking an asset of the Westland estate, "he is seeking a ruling of good title to *his* property."  *Id.*

The estate contends that Nimro is seeking title to an asset of the estate and thus is asserting a claim against it which should have been filed in the estate proceedings, per § 8-103(a), within six months after Westland's death.  The claim does not lie beyond the intendment of § 8-103(a) because the nonclaim statute applies to "*all*" claims whether "founded on contract, tort, or *other legal basis.*"  (Emphasis added).

Appellee also emphasizes that the policy of § 8-103 is to expedite the administration of estates, a policy that is satisfied by requiring one whose claim rests on adverse possession to come forward within six months, or be barred.  The bill to quiet title, the estate asserts, is subject to the nonclaim statute because this Court held the statute to apply to an action in equity, *i.e.*, specific performance, in *Lowery v. Hairston*, 73 Md. App. 189, 533 A.2d 922 (1987).

Thus, appellant's position is that adverse possession and prescription created Nimro's interests in the disputed property by operation of law when the twenty years had run. Appellee's ultimate position necessarily is that no interest in realty that arose by adverse possession or prescription can survive, if the title to realty devolves into a testamentary estate, unless the holder of the adverse interest timely files a claim per ET § 8-103(a).

Phrasing the question to be whether filing an action to quiet title is asserting a claim against the estate does not answer the question whether the judicial declaration of status of title itself creates the title as of the declaration or whether the declaration, if favorable to the party asserting adverse possession, is the judicial recognition of a legal consequence of a state of facts that took effect at an earlier date.

Our first inquiry is whether Nimro's view of the substantive law of adverse possession is correct.

### *The Nature of Adverse Possession*

Adverse possession has been described as "a method of transition of ownership through nonassertion of title thereto, coupled with unauthorized possession thereof by one lacking good title[.]"  4 *Tiffany Real Property* § 1132 (3d ed. 1939).

This Court has given the following explanation:

> "'Adverse possession is a method whereby a person who was not the owner of property obtains a valid title to that property by the passage of time.' Md. Civ. Pattern Jury Instr. 2:1 (MPJI-Civ.).  'A number of policy justifications for the doctrine of adverse possession have been advanced.' Herbert T. Tiffany & Basil Jones, *Tiffany Real Property*, Neighbor § 6:2 (1975, through Sept. 2006) ....  Most commonly, 'courts justify the existence and application of adverse possession' for one or more of the following reasons:

> > "'First, there is a societal interest in "quieting" title to property by cutting off old claims.  Second, there is a desire to punish true owners of land who neglect to assert their proprietary rights.  Third, there is a need to protect the reliance interests of either the adverse possessor or others dealing with the adverse possessor that are justifiably based on the *status quo*.  Last an efficiency rationale, asserting a goal of promoting land

development, seeks to reward those who will use land and cause it to be productive'

"*Id.*"

*Hillsmere Shores Improvement Ass'n v. Singleton*, 182 Md. App. 667, 691, 959 A.2d 130, 140 (2008) (quoting *Yourick v. Mallonee*, 174 Md. App. 415, 422, 921 A.2d 869, 873-74 (2007)).

The Court of Appeals has recognized that title through adverse possession is acquired on the expiration of the twentieth year, a transfer that occurs by operation of law and without any need for a judicial determination. *Trustees of Broadfording Church of the Brethren v. Western Md. Ry. Co.*, 262 Md. 84, 277 A.2d 276 (1971). The facts of that case, for summary judgment purposes, were:

| 1912 | A 100 ft. right of way, containing 8.47 acres, was granted to the railroad over the subject property. |
| 1930 | One Dorsey acquired an undivided half interest in the subject property. |
| 1936-37 | After railroad bridge over the Potomac washed out, spur line tracks were removed. Dorsey enclosed the right of way and began use. |
| 1960 | The railroad sued in ejectment. Case languished on docket. |
| 1963 | Dorsey sells to Beavers. Conveyance excludes the right of way as do subsequent conveyances. |
| 1967 | Dorsey dies. His will devises residue to appellant church. |

Noting that "the critical date is 1937, when Dorsey is alleged to have taken possession of the right of way," the Court held:

"If Dorsey's pleas can be substantiated by competent testimony, he acquired title to the disputed right of away in 1957 by adverse possession, and if he did, from 1957 on, he held a title which he could have alienated by conveyance or devise. The circumstance that he specifically excluded the right of way in the deed to Beavers left title in him, *Fleischmann v. Hearn*, ... 141 Md. [463,] 468, 118 A. 847[, 849] (1922)[.]"

*Id.* at 87-88, 277 A.2d at 278 (footnote omitted).

The Court also quoted approvingly from 3 American Law of Property, § 15.14, at 828 (1952), as follows:

"'It has even been stated that after the statute has fully run the title should be treated as having vested at the date of inception of the adverse possession. Whatever the date, having once vested it acquires the attributes of other vested titles in that it cannot be divested by parol abandonment, by the re-entry of the former owner, or by a failure to continue to possession.'"

*Id.* at 88, 277 A.2d at 278.

To the same effect is *Safe Deposit & Trust Co. v. Marburg*, 110 Md. 410, 72 A. 839 (1909), which sustained the constitutionality of Chapter 502 of the Acts of 1884 providing that, whenever any demand for payment, or payment of, a ground rent had not been made for more than twenty consecutive years, the rent was conclusively presumed to have been extinguished, with the result that the reversionary interest was terminated. Describing this statute as addressing proof that would satisfy adverse possession, the Court said:

"[T]here can be no reason why such adverse holding of the tenant should not be given the same effect as is given to other adverse possessions. The effect of adverse possession is thus stated in 1 Am. & Eng. Ency. of Law, 883: 'By adverse possession of land for the statutory period of limitation the adverse holder acquires a title in fee simple, which is as perfect as a title by deed. Its legal effect is, not only to bar the remedy of the owner of the paper title, but to divest his estate, and vest it in the party holding adversely for the required

- 8 -

period of time, so that he may maintain an action of ejectment for the recovery of the land even as against the holder of such paper title who has ousted him.' That doctrine was early recognized in this state. *Armstrong v. Risteau*, 5 Md. 256, 59 Am. Dec. 115. See also Cooley's Const. Lim. (365); 1 Cyc. 1135."

Obtaining an easement by prescription, as alleged in Count II of Nimro's complaint to quiet title, operates the same way. This is forcefully illustrated by the description of a side effect of the creation of an easement at the expiration of the twentieth year that is found in Restatement (First) of Property § 465 (1944), Comment *a*.

> "*a. Effect of running of prescriptive period on liability for past use.* An adverse use ordinarily constitutes an invasion of the rights of the owner of the land used. Where it does, a cause of action arises against the user at the moment the use is made as, for example, for a trespass to the land, or for damages caused by taking some substance from the land. On this cause of action the applicable statute may prescribe a period less than the prescriptive period. Thus the remedy for some acts of adverse use may have been barred before the adverse use has continued for the prescriptive period and, therefore, before an easement has been created by prescription. Conversely, even though the period of limitation for the recovery of damages is less than the prescriptive period, it must always be true that the statute has not run on all of such causes of action upon the completion of the prescriptive period. Until the last moment of the prescriptive period, the acts of adverse use are generating new causes of action. For those immediately preceding the running of the prescriptive period, the statutory period cannot have run. Nevertheless, upon the running of the prescriptive period and the consequent creation by prescription of an easement, all acts of adverse use contributing to the creation by prescription of such easement become privileged retroactively. Even though the statute of limitations has not run on the causes of action created by them, they become privileged under the easement to the creation of which they have contributed."

Thus, assuming as we do at this threshold stage, that Nimro can prove facts giving rise to title by adverse possession, or an easement by prescription, that vested in him, directly

or indirectly, before Westland's death, the question becomes whether § 8-103 reaches those interests.

### *The Scope of § 8-103(a)*

In *Baltimore County v. Baltimore County Fraternal Order of Police Lodge No. 4*, 439 Md. 547, 572, 96 A.3d 742, 756-57 (2014), the Court reviewed some of the principal rules of statutory construction, saying:

> "Our canons of statutory construction require that we begin with the plain language of the statute in our endeavor to 'ascertain and effectuate the intent of the Legislature.' *Bowen v. City of Annapolis*, 403 Md. 587, 613, 937 A.2d 242, 257 (2007) (quoting *Kushell v. [Department] of Nat. Res.*, 385 Md. 563, 576-78, 870 A.2d 186, 193-94 (2005)); *see also Marriott Emps. Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444-45, 697 A.2d 455, 458-59 (1997) ('The cardinal rule of statutory construction is to ascertain and carry out the intention of the Legislature.'). In interpreting statutes, we seek 'to avoid constructions that are illogical, unreasonable, or inconsistent with common sense.' *Marriott Emps.*, 346 Md. at 444-45, 697 A.2d at 458-59 (quoting *Frost v. State*, 336 Md. 125, 137, 647 A.2d 106, 112 (1994)). Our interpretation should seek to avoid constructions that render any 'word, clause, sentence or phrase' of a statute meaningless. *Montgomery Cnty. v. Buckman*, 333 Md. 516, 524, 636 A.2d 448, 452 (1994) (citations omitted). In *Marriott Employees*, we explained that, when a statute is ambiguous,

>> "'courts must consider not only the literal or usual meaning of the words but also the meaning of words in light of the statute as a whole and within the context of the objectives and purposes of the enactment. Common sense must guide us in our interpretation of statutes .... [T]he Court may not insert or omit terms to make a statute express an intention not reflected in the statute's original form.'

> "*Marriott Emps.*, 346 Md. at 444-45, 697 A.2d at 458-59 (citations omitted)."

Viewing the statute as a whole, it clearly contemplates that most claims against a decedent's estate will be monetary. ET § 8-104 addresses the presentation of claims. "The claimant may deliver or mail to the personal representative a verified written statement of the claim indicating ... the amount claimed." ET § 8-104(b). ET § 8-104(c) presents the form of claim in cases where it is filed with the register. In part, subsection (c) reads: "The below-named creditor certifies that there is due and owing by... deceased, in accordance with the statement of account attached ... the sum of [state amount]." The Henderson Commission comment to present ET § 8-104(c) states that the form is "applicable for the filing of all claims with the Register." See Maryland Code (1974), ET § 8-104, Comment to Former Article 93, § 8-104.

This Court, however, has rejected a contention that § 8-103(a) applies exclusively to monetary claims. *Lowery v. Hairston*, 73 Md. App. 189, 533 A.2d 922 (1987), was an action for specific performance against the personal representative of a decedent who had entered into an option agreement with optionees, the Lowerys, for the purchase of realty by the latter. Under the contract, the Lowerys had thirty days to exercise the option after notice from the personal representative of the optionor's death. Ultimately, this Court, reversing the trial court, held that the option was timely exercised and that the specific performance action was timely filed against the estate. Relevant here is that this Court first rejected an alternative argument by the Lowerys that "an interest in real property is not subject to" § 8-103(a) assertedly because Title 8 of the Estates and Trusts Article applied only to monetary

claims. This Court rejected the attempt to draw a line between real and personal property, pointing out that the 1969 revision of the testamentary law made all property of a decedent pass directly to the personal representative who holds legal title for administration and distribution. ET § 1-301.[1]

An action to quiet title against an estate, predicated on adverse possession, is not like a specific performance action against an estate. The latter rests on a contract made by the decedent or personal representative and is an in personam claim. The former rests on title arising from the plaintiff's (wrongful) conduct and the absence of an assertion of rights by the record owner. It is an in rem action. See Maryland Code (1974, 2010 Repl. Vol.), § 14-108 of the Real Property Article.[2]

_____

[1]ET § 8-103 came into play in *Lowery* indirectly. The specific performance claim arose after the death of the decedent and was against the estate. It was governed by § 8-104(d) which recognized that, under those circumstances, no claim need be filed but any action brought was to be filed within the time for filing claims set forth in § 8-103.

[2]Section 14-108 reads:

"**§ 14-108. Quieting title.**

"(a) *Conditions*. – Any person in actual peaceable possession of property, or, if the property is vacant and unoccupied, in constructive and peaceable possession of it, either under color of title or claim of right by reason of his or his predecessor's adverse possession for the statutory period, when his title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property, or any part of it, or to hold any lien encumbrance on it, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a suit in

(continued...)

- 12 -

Consistent with the distinction that we have drawn above is *Hamilton v. Caplan*, 69 Md. App. 566, 518 A.2d 1087 (1987). It involved disputes between the estate of an accountant and his surviving sister that were the subject of a jury trial on issues on which the trial court's declaratory judgment was based. One dispute involved the sum of $16,870 which the jury found had been given by the claimant to her brother for investment on her behalf, but the trial court declared that claim was barred by ET § 8-103. This Court affirmed, reasoning:

> "In the case sub judice, the appellant claimed that the money given to the decedent by the appellant for investment belonged to her and was never a part of the decedent's estate. Accordingly, the appellant asserts that the claim could not be barred by the Estates and Trusts Article since no claim was ever made against the estate. In order to evaluate the appellant's theory, it is necessary to first define what is meant by a 'claim against an estate of a decedent.'

> "Although Maryland has never specifically construed the term 'claim' within the meaning of the statute *sub judice*, it has been defined generally in other jurisdictions having statutes similar to Maryland. For example:

---

[2](...continued)
equity in the county where the property lies to quiet or remove any cloud from the title, or determine any adverse claim.

"(b) *Proceeding.* – The proceeding shall be deemed in rem or quasi in rem so long as the only relief sought is a decree that the plaintiff has absolute ownership and the right of disposition of the property, and an injunction against the assertion by the person named as the party defendant, of his claim by any action at law or otherwise. Any person who appears of record, or claims to have a hostile outstanding right, shall be made a defendant in the proceedings."

"'The word "claims," as used in non-claim statutes, has been construed to mean debts or demands of a pecuniary nature that could have been enforced against the deceased in his lifetime and could have been reduced to a simple money judgment. The phrase "debts or demands" has also been construed to include claims of creditors that could be enforced in equity. ...'

"Appellant's claim for the return of the money she gave her brother to invest is barred by the nonclaim statute. With this claim, appellant stands in the shoes of a creditor. The claim is a demand of a pecuniary nature which could have been enforced against the decedent in his lifetime."

*Id.* at 588-89, 518 A.2d at 1098 (citations omitted).

Although the claimant in *Hamilton* attempted to argue that the fund entrusted for investment was her property, money is fungible. It is not specific personalty. Her claim was based on the duty of her agent to account. Thus, it was an in personam claim.

ET § 8-103(d) advises what is not included with a claim under § 8-103(a), and it draws the same type of distinction that we have noted above. It reads:

"(d) Nothing in this section shall affect or prevent an action or proceeding to enforce a mortgage, pledge, judgment or other lien, or security interest upon property of the estate."

The Henderson Commission note to present § 8-103(d) explains that it and sections dealing with claims not yet due and with secured claims "make it clear that the failure of the secured creditor to file his claim does not impair his right against the security; it only impairs his right to a [deficiency judgment]. The failure to file a claim has, therefore, the same effect as an exculpatory clause in a security agreement." Maryland Code (1974), Comment to Former Article 93, § 8-103, following ET § 8-103, at page 169.

- 14 -

Thus, the nonclaim statute considers the title to, or ownership of, the security interest, which was created before death, not to be part of the decedent's estate and is not a claim against the estate, while the personal covenants to pay the debt create an obligation to pay that is not limited to the security, is enforceable against all of the debtor's assets, and is a claim against the estate. Where, as here, the title or ownership of specific property is alleged to have been fully acquired by an adverse possession before the decedent's death, it would seem that the assertion of that right is not a claim against the estate.

We have explained, *supra*, that adverse possession of fee simple realty ordinarily creates a fee simple estate in the adverse possessor. But, if one superimposes on that established law the effect which the Westland estate advocates, anomalies and difficulties are created. Appellee says that if, after title by adverse possession has arisen, no claim is filed in an estate that appears of record to have held title during the twenty year period, the true title reverts to the estate. That sounds very much as if adverse possession creates a determinable fee. But Maryland law disfavors possibilities of reverter and rights of reentry for condition broken. See Maryland Code (1974, 2010 Repl. Vol.), §§ 6-101 through 6-105 of the Real Property Article, enacted by Chapter 12 of the Acts of 1974. Appellee's construction of ET § 8-301 adopts an unsatisfactory policy in an area of the law in which predictability is desirable.

### Other Authorities

Our analysis is also supported by the rationale of the cases described below. *Hayes v. Jayne*, 498 S.W.2d 829 (Mo. App. 1973), was an action to quiet title to realty brought by the executor of a deceased mother's estate against her son and daughter-in-law. In 1940, the mother had executed a deed of a farm to the son and his wife, in which she reserved a life estate, but the deed was never recorded prior to the grantor's death in 1970. There was sufficient evidence to support the trial court's finding that the grantor intended to vest immediate title in the grantees. The executor also unsuccessfully argued the nonclaim statute. The Court ruled:

> "The simple answer to that contention is that respondent's suit is not a 'claim.' Claims are 'liabilities of the decedent which survive ...' Section 472.010 RSMo 1969, V.A.M.S. Respondent's suit is not founded upon any liability of the decedent. It seeks only to have determined whether the land involved belongs to respondent or the estate. Having found delivery of the deed in 1940 respondent was at that time vested with the remainder interest in the real estate to become effective upon grantor's death. Grantor's life estate in the property terminated upon her death. The real estate involved was not an asset of decedent at the [time] of her death, nor an asset of the estate."

*Id.* at 832.

Similar is *Kendall v. Kendall*, 171 Kan. 222, 231 P.2d 212 (1951), also an action to quiet title. It was brought on behalf of an incompetent person to whom the property had been conveyed outright by his grandfather in 1915. The disabled person's mother was appointed his guardian in 1929. In 1944, she executed, in her individual capacity, a deed to the defendants of the subject land. The mother died in 1948. One contention of the

defendants was that the claim was properly against the mother's estate and was barred by the nonclaim statute. Rejecting that argument, the court held:

> "Defendants contend that plaintiff's action is barred by G.S. 1949, 59-2239, because he did not present a claim against the estate of Ethel Kendall within the stated nine-months period for allowance of claims. Since plaintiff does not claim title to this land as an heir of Ethel Kendall, by virtue of any contractual relationship with her, or on the theory that she held the title in trust for the plaintiff, it seems clear that this action attempts neither to take from nor add to the estate of Ethel Kendall and as a consequence, the probate court would have no jurisdiction over the subject matter of the action. This is nothing more than an action in ejectment and to quiet title in the plaintiff as against the claim of the defendants under a deed executed by Ethel Kendall as grantor in her individual capacity attempting to convey property in which she had no interest, which deed casts a cloud upon the plaintiff's title."

*Id.* at 224, 231 P.2d at 214.

The rule that we apply here is also consistent with the policy of the Uniform Probate Code (1969, 2010 Rev.), § 1-201(6) which defines "Claims," but states that the "term does not include ... demands or disputes regarding title of a decedent or protected persons to specific assets alleged to be included in the estate."

For these reasons, we hold that Nimro's action to quiet title is not barred by the nonclaim statute.

## II

The appellee estate also argues that Counts I and II of the complaint should have been dismissed because their allegations are general and conclusory and fail to state facts showing that Nimro has rights based on adverse possession or prescription. The circuit court, however, did not rule on this ground, and we decline to do so in the first instance. The trial

court has a discretion to grant leave to amend, even if a complaint is deficient as a pleading. We shall not presume to exercise that discretion.

## III

The appellee has moved to strike the four page appendix included in the appellant's reply brief. That motion is granted. The appendix is discovery material that is not part of the record.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID 90% BY APPELLEE AND 10% BY APPELLANT.**